DECISION
The matter before the Court involves a motion to dismiss brought by the Chief Judge of the Family Court, the Family Court Administrators, and the Magistrates of the Family Court (collectively "Court Defendants") alleging lack of subject-matter jurisdiction pursuant to Super. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted pursuant to Super. Civ. P. 12(b)(6). Plaintiffs brought a timely objection, and this matter was heard before the Superior Court on August 3, 2010.
 I Facts Travel
The motions before this Court were filed in response to a putative class action lawsuit brought on behalf of numerous juveniles and parents who participated in the Truancy Court program. Plaintiffs collectively filed suit against various Court Defendants, as well as specific municipalities that participated in the Truancy Court program, alleging system-wide violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *Page 2 
article 1, section 2 of the Rhode Island Constitution, the Rhode Island General Laws, the Rhode Island Rules of Juvenile Procedure, and the Code of Judicial Conduct[1] of the State of Rhode Island.
The Truancy Court program was instituted in September of 1999 by Family Court Chief Judge Jeremiah S. Jeremiah. It is essentially "a specialized calendar created to allow magistrates to hold court at schools where truancy was a problem." (Judicial Defs.' Mem. in Supp. of Their Mot. to Dismiss at 2.) Such an arrangement ensured that students missed as little school time as possible, and also enabled the "collaboration of the court, school, and service providers" to ensure that "the child and parent(s) . . . receive(d) guidance and services within their own neighborhood quickly, efficiently and effectively." Id.
The first Truancy Court was established at Hope High School, in the City of Providence, Rhode Island. Over the next several years, the Truancy Court program expanded rapidly, and Truancy Courts are now present in thirty-three communities, servicing over one hundred fifty schools in forty-three separate locations. In the 2005-2006 school year, 2,275 juveniles were involved in Truancy Court proceedings.[2]
According to the Truancy Court rules, "each defendant is given the choice between admitting to a truancy violation, thereby gaining acceptance into the truancy court program, or having a full trial in the Family Court." Id. Truancy is prosecuted as a civil infraction; "children cited as truants under R.I.G.L. § 16-19-6 are defendants in a Family Court proceeding in order to determine if they are wayward." Id. "Acts that may make a child eligible for detention as a wayward youth include: deserting their households, refusing to listen to their parents, being habitually absent from school or failing to follow the rules in school."Id. at 2-3 (citing G.L. 1956 § 14-1-3). *Page 3 
According to Defendants, "[a]dmission to the truancy court program does not in itself lead to the possibility of incarceration."Id. at 3. Children admitted to Truancy Court by admitting violation of § 16-19-1 "are given a sentence of probation, which is stayed pending successful completion of the truancy court's requirements." Id. "It is only when a criminal contempt of an order of the court occurs, and a ruling is made pursuant to both its inherent authority and pursuant to statute, under R.I.G.L. § 8-10-38 and/or R.I.G.L. § 8-10-38.1, that the threat of incarceration may attach." Id.
Defendants further maintain that "decisions and actions of the Truancy Court are not without appeal. Under Rhode Island Family Court Administrative Order 2008-1 . . . the appeal is, in the first instance, heard by the Chief Judge of the Family Court. Should an appellant not gain success, the appellant can further appeal to the Supreme Court under either R.I.G.L. § 8-1-2 or R.I.G.L. § 14-1-52." Id.
Furthermore, "the remedies of the various writs (e.g. habeas corpus, writ of mandamus or at a bare minimum certiorari) are always available to plaintiffs in the event that a legal right has actually, and materially, been deprived." Id.
Plaintiffs' Amended Complaint, (hereinafter simply "complaint"), specifically alleges that Defendants Jeremiah Jeremiah, as Chief Judge, and Ronald Pagliarini, and Kevin Richard — as the administrators of and final policymakers with respect to the Truancy Court program — failed to ensure that:
 (1) "The Family Court's Intake Department investigates truancy petitions before filing them to determine whether they are legally sufficient on their face and whether further action is in the best interest of the public and the children who are the subject of the petitions, as required by state constitutional and statutory law;"
 (2) "Stenographic or other verbatim recordings are made of all Truancy Court proceedings as required by federal and state constitutional law, and state statutory law;" and *Page 4 
 (3) "Interpreters are provided to all individuals appearing before the Truancy Court who do not speak or understand English with sufficient fluency." (Pls.' Resp. to Defs.' Mot. to Dismiss at 4.)
"Plaintiffs seek declaratory and injunctive relief with respect to each of these three claims." Id.
With respect to the Defendant Truancy Court Magistrates, Plaintiffs Amended Complaint specifically alleges that these Defendants:
 (1) "Arraign and issue orders against members of the Plaintiff Class over whom personal jurisdiction has not been established, in violation of federal and state constitutional law;"
 (2) "Fail to provide the Plaintiff Class the information necessary at arraignment, in violation of federal and state constitutional law and state statutory law;"
 (3) "Fail to obtain knowing and voluntary waivers of procedural due process protections by parents and students appearing before the Truancy Court, in violation of federal and state constitutional law;"
 (4) "Permit children members of the Plaintiff Class to waive their right to counsel without first consulting with counsel, in violation of federal and state constitutional law;" and
 (5) "Engage in ex parte communications with prosecuting school officials regarding members of the Plaintiff Class, in violation of federal and state constitutional law and the Rhode Island Code of Judicial Conduct." Id. at 5.[3]
"Plaintiffs seek declaratory relief with respect to each claim and injunctive relief with respect to the first claim." Id.
Defendants timely moved to dismiss pursuant to Super. R. Civ. P. 12(b)(1), and Super. R. Civ. P. 12(b)(6), alleging lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, respectively. Specifically, Defendants argue that:
 (1) "[T]he particular claims launched require an interpretation and application of chapter 19 of Title 16 of the General Laws of Rhode Island which, by statute, has been completely delegated to the Family Court;" *Page 5 
 (2) "[P]rinciples of comity require the Superior Court to abstain from hearing this case as the parties, forms of relief and legal arguments are similar to those present in pending cases in Family Court;" and
 (3) "[T]he basis of the action, 42 U.S.C. § 1983, is a federal claim made against the state that is barred by both the Eleventh Amendment to the Constitution of the United States and sovereign immunity, which has not been waived."
Plaintiffs respond that the Superior Court has authority to adjudicate this action because it has general jurisdiction over all cases that the General Assembly has not explicitly directed to another state forum. Chase v. Bouchard,671 A.2d 794, 796 (R.I. 1996) (citing La Petite Auberge,Inc. v. Rhode Island Commission for Human Rights,419 A.2d 274, 279 (R.I. 1980)). Nothing in the General Laws, rules, or regulations directs that class action lawsuits brought pursuant to 42 U.S.C. § 1983 be filed in another forum. Secondly, Plaintiffs argue that principles of comity, abstention, and immunity do not apply because Plaintiffs do not seek to collaterally attack trial court orders or adjudications. Lastly, Plaintiffs argue that Eleventh Amendment immunity and federal abstention do not apply because they are only applicable to federal court actions, not state court actions.
This Court will address each argument in turn.
 II Standard of Review
Rule 12(b) of the Rhode Island Superior Court Rules of Civil Procedure provides for seven defenses that may be made by motion at the option of the pleader. In the case at bar, Defendants have moved to dismiss pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted. *Page 6 
 A Rule 12(b)(1)
A motion brought pursuant to Rule 12(b)(1), alleging lack of subject matter jurisdiction, questions the Court's authority to adjudicate the matter before it. "It is an axiomatic rule of civil procedure that such a claim may not be waived by any party and may be raised at any time in the proceedings." Pine v.Clark, 636 A.2d 1319, 1321 (R.I. 1994) (citing La PetiteAuberge, Inc. 419 A.2d at 280). As the Superior Court of Rhode Island is a trial court of general jurisdiction, deriving its authority from statute, it possesses "subject-matter jurisdiction over all cases unless that jurisdiction has been conferred by statute upon another tribunal." Chase v. Bouchard,671 A.2d 794, 796 (R.I. 1996) (citing La Petite Auberge,Inc., 419 A.2d at 279). Because the issue of subject-matter jurisdiction is a threshold inquiry, it must be addressed prior to reaching the merits of a case.
 B Rule 12(b)(6)
"The sole function of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint."McKenna v. Williams, 874 A.2d 217, 225 (R.I. 2005) (quotingRhode Island Affiliate, ACLU, Inc. v. Bernasconi,557 A.2d 1232, 1232 (R.I. 1989)) (internal quotations omitted). In determining whether to grant a Rule 12(b)(6) motion to dismiss, this Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs."Giuliano v. Pastina, Jr., 793 A.2d 1035, 1036-37 (R.I. 2002) *Page 7 
(quoting Martin v. Howard, 784 A.2d 291, 297-98 (R.I. 2001)). Rhode Island courts have traditionally held that "a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) should be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena, M.D. et al. v. MicrosoftCorporation, 796 A.2d 461, 463 (R.I. 2002) (citing Bruno v.Criterion Holdings, Inc., 736 A.2d 99, 99 (R.I. 1999)).
 III Analysis A The Issue of Subject-Matter Jurisdiction
The Superior Court is a court of general jurisdiction, possessing jurisdiction over all cases not specifically delegated to another tribunal. Thus, in order to better determine whether the Superior Court has jurisdiction over this action, this Court must examine what has been delegated by statute to other tribunals. Defendants have argued that the Superior Court cannot enjoin a co-equal court and have suggested that the exercise of subject-matter jurisdiction would "create a constitutional confrontation between two co-equal state courts." (Defendant Administrators' Mem. in Supp. of Their Mot. to Dismiss at 2.) Except for the Rhode Island Supreme Court, the Rhode Island Constitution does not mention "co-equal" courts or purport to further stratify any other courts in the state. Article X specifically provides:
 • Section 1. Power vested in court. — The judicial power of this state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish.
 • Section 2. Jurisdiction of supreme and inferior courts — Quorum of supreme court. — The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law. A majority of its judges shall *Page 8 
always be necessary to constitute a quorum. The inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law.
The General Assembly enacted legislation that expounds on the Supreme Court's supervisory jurisdiction:
 "§ 8-1-2 Jurisdiction and powers of court. — The supreme court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided; it may issue writs of habeas corpus, of error, certiorari, mandamus, prohibition, quo warranto and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law; it may entertain informations in the nature of quo warranto and petitions in equity to determine title to any office; it shall have jurisdiction of petitions for trials and new trials, as provided by law, of bills of exceptions, appeals and certifications to the supreme court, and special cases in which parties having adversary interests concur in stating questions for the opinion of the court as provided by law; and it shall by general or special rules regulate the admission of attorneys to practice in all the courts of the state." (emphasis added).
In addressing whether the Superior Court has subject-matter jurisdiction to issue declaratory and injunctive relief against the Family Court, it is first necessary to examine whether any other remedy is expressly provided to address the Plaintiffs' allegations with respect to the various Court Defendants in either the Supreme Court or the Family Court.
 Historical Evolution of Rhode Island Courts
In 1905, the Rhode Island General Assembly passed sweeping legislation outlining the necessary structure, format, and procedure to be utilized in the judiciary branch. This legislation, entitled the Court and Practice Act ("CPA"), included sections covering the various lower courts and their officers (Title I); actions, pleading, practice, and procedure in the courts (Title II); writs, executions, and service thereof (Title III); probate courts (Title IV); estates of deceased *Page 9 
persons and those under guardianship (Title V); presentation and proof of claims against estates of deceased persons (Title VI); and fees and costs (Title VII).
Title I, Chapter 2, of the CPA dealt specifically with the Superior Court. Section 2 (9) of Title 1 provided, in relevant part, that: "the superior court shall have exclusive originaljurisdiction, except as otherwise provided by law, of suits and proceedings in equity, and of statutory proceedings following the course of equity, of petitions for divorce, separate maintenance, alimony, and custody of children." (Emphasis added.) See alsoMowry v. Bliss, 28 R.I. 114, 115 (1907).[4]
Title I, Section 2 (9), of the CPA eventually evolved into § 8-2-13 of the Rhode Island General Laws. That section, entitled "Exclusive jurisdiction of equity actions," provides as follows:
 "The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity; provided, however, that every probate court shall have the power, concurrent with the superior court, to replace, remove, or fill any vacancy of any trustee under a trust established under a will, or to effect tax minimization or estate planning under § 33-15-37.1. If an action is brought in the superior court which represents an attempt in good faith to invoke the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided the other actions are joined with the action so brought or are subsequently made a part thereof under applicable procedural rules, and the court may retain jurisdiction over the other actions even though the initial action fails for want of equity jurisdiction."
Notwithstanding the enactment of the CPA, treatment of juvenile offenders at the time was still rather harsh. See State vDay, 911 A.2d 1042, 1048 (R.I. 2006). In 1882, national legislation gave criminal courts discretion either to sentence juveniles to reform school or to impose such *Page 10 
punishment as is otherwise provided by the law. See Laureen D'Ambra[5], A Legal Response to Juvenile Crime: Why Waiver ofJuvenile Offenders is Not a Panacea,2 Roger Williams U. L. Rev. 277, 279-80 and Footnote 19 (1997)
(quoting John J. Cloherty III, Note, The Serious Juvenile Offenderin the Adult Criminal System: The Jurisprudence of Rhode Island'sWaiver and Certification Procedures, 26 Suffolk U. L. Rev. 407, 414 (1992) (quoting 1882 P.L. Ch. 248, s 49), (hereinafter cited simply as "D'Ambra"). In 1898, Rhode Island was the first state to legislatively mandate segregated, juvenile adjudicatory hearings. This new legislation provided for separate hearings, calendars and dockets for juvenile cases in Providence and Newport. See D'Ambra,supra, at 286 and Footnote 64 citing Rhode Island Governor's Justice Commission Statistical Analysis Center, Rep. No. 35, Juveniles in Rhode Island: An Overview of the State's Juvenile Justice System and a Data Analysis/Statistical Summary Thru Year 1993 (Feb. 1995). These procedures were extended to the rest of the State in 1915 with the enactment of the Juvenile Court Act. Juvenile offenders were generally dealt with in the Juvenile Court which was within the District Court.Id. at 286 and Footnote 65 citing 1915 P.L. Ch. 1185.
 Evolution of the Family Court
In 1944, the Rhode Island Legislature removed what was then called the Juvenile Court from the jurisdiction of the District Court, created Rhode Island's first fully independent Juvenile Court, and gave that new court its own Chief Justice. Id. at 287-88.See also, State v. Day,supra, at 1048-49 citing 1944 P.L. Ch. 1441. Later, in 1961, the Juvenile Court merged with the *Page 11 
existing Family Court, which then assumed jurisdiction over juvenile offenders. State v. Day, supra, at 1049 citing R.I. P.L., 1961, Ch. 73. See also D'Ambra, supra at 288.
The Family Court's jurisdiction was both original and exclusive, and it extended to, among other things, the adjudication of matters involving juveniles alleged to be either wayward or delinquent.See State v Day, 911 A.2d 1042, 1048-1049 (R.I. 2006). Notwithstanding the above language, the Rhode Island Supreme Court, in State v. Day, noted that:
 "As it exists today, the Family Court is a court of limited statutory jurisdiction, State v. Kenney, 523 A.2d 853, 854 (R.I. 1987) (`the Family Court is a court of limited jurisdiction whose powers are strictly limited to those conferred by the Legislature'), and its governing statutes give it subject matter jurisdiction only over a very narrow range of criminal violations dealing with offenses committed by adults against either children or members of the offender's family." State v Day, supra, at 1049.
Furthermore, contained among the provisions of the above mentioned 1961 Family Court legislation, the Superior Court's equity jurisdiction remained intact in much the same form as it exists to this date. See specifically, chapter 73, § 2, at p. 218 of the Public Laws of 1961 providing:
 "Section 8-2-13 of the general laws, in chapter 8-2, entitled "Superior court," is hereby amended to read as follows: "8-2-13. Exclusive jurisdiction of the superior court. — The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings in equity and of statutory proceedings following the course of equity."
 The Family Court Today
Section 8-10-3 of the General Laws established the Family Court and remains the controlling statute today. It provides in pertinent part:
 "Establishment of court — Jurisdiction — Seal — Oaths. —
 (a) There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine . . . *Page 12 
those matters relating to delinquent, wayward, dependent, neglected, or children with disabilities who by reason of any disability requires special education or treatment and other related services."
In September 1999, Chief Judge Jeremiah S. Jeremiah established the State's first Truancy Court at Hope High School, in the City of Providence. During the 2000-2001 school year, the Truancy Court was expanded to include courts in Woonsocket, Central Falls, Pawtucket and Newport. Truancy Courts are now present in thirty-three communities, servicing over one-hundred-fifty schools in forty-three separate locations. In the 2005-2006 school year, 2,275 juveniles were involved in Truancy Court proceedings.[6]
The mission statement for the Truancy Court indicates that:
 "The goal of the RI Family Court Truancy Court is to reach out to individual communities and families to help reduce the truancy rate. It is our mission to join together with local school departments, community mental health providers, families and the courts to address the causes and solutions to fight truancy and provide youths with the opportunity to a better education. When dealing with children and their education, it is our mission not to leave one stone unturned to help better their education at all levels. We are committed to provide the tools necessary to help attain those goals."[7]
The applicable compulsory school attendance statute — section 16-19-1 — provides in relevant part:
 "Attendance required. — (a) Every child who has completed or will have completed six (6) years of life on or before September 1 of any school year and has not completed sixteen (16) years of life shall regularly attend some public day school during all the days and hours that the public schools are in session in the city or town in which the child resides. Every person having under his or her control a child as described in this section shall cause the child to attend school as required by this section, and for every neglect of this duty the person having control of the child shall be fined not exceeding fifty dollars ($50.00) for each day or part of a day that *Page 13 
the child fails to attend school, and if the total of these days is more than thirty (30) school days during any school year, then the person shall, upon conviction, be imprisoned not exceeding six (6) months or shall be fined not more than five hundred dollars ($500), or both; provided, that if the person so charged shall prove that the child has attended for the required period of time a private day school approved by the commissioner of elementary and secondary education pursuant to § 16-60-6(10), or a course of at-home instruction approved by the school committee of the town where the child resides, or that the physical or mental condition of the child was such as to render his or her attendance at school inexpedient or impracticable, or that the child was excluded from school by virtue of some general law or regulation, then attendance shall not be obligatory nor shall the penalty be incurred. (b) Every child enrolled in school who completes or has completed sixteen (16) years of life and who has not yet attained eighteen (18) years of age shall regularly attend school during all the days and hours that the public schools are in session in the city or town in which the child resides unless the person having control of the child withdraws the child from enrollment in accordance with § 16-67.1-3. Provided, however, that nothing in this subsection or in subsection (a) of this section shall prohibit or limit cities or towns from enacting programs of early intervention and/or mediation in an effort to address the problems of students who are habitually late or absent from school."
The law further provides for proceeding against those who might be considered habitual truants. Specifically, § 16-19-6 provides:
 "Proceedings against habitual truants and offenders. — Every habitual truant, that is, every child who is required under § 16-19-1 to attend school and who willfully and habitually absents himself or herself from attending school; and every habitual school offender, that is, every child who is required to attend school under the provision of § 16-19-1, but who persistently violates the rules and regulations of the school which he or she attends, or otherwise persistently misbehaves in the school which he or she attends, so as to render him or herself a fit subject for exclusion; shall be deemed a wayward child as provided in chapter 1 of title 14, and shall be subject to all the provisions of chapter 1 of title 14, and may be proceeded against and dealt with as a wayward child in accordance with the provisions of chapter 1 of title 14." (Emphasis added.) *Page 14 
The sections of law contained in Chapter 14-1 provide the framework for dealing with a wayward child. The chapter defines "wayward" to mean and include any child: "[w]ho, being required by chapter 19 of title 16 to attend school, willfully and habitually absents himself or herself from school or habitually violates the rules and regulations of the school when he or she attends." Sec. 14-1-3(9)(v).
Assuming a child comes within the meaning of "wayward," the law provides direction as to how to proceed against said child in the family court. Specifically, § 14-1-10, entitled, Preliminary investigation on information furnished to court, provides:
 "Except in case of emergency detention, whenever any appropriate person shall give to the court information in his or her possession that a child is within the provisions of this chapter, it shall be the duty of the court to make a preliminary investigation to determine whether the interests of the public or of the child require that further action be taken, and to report its findings together with a statement of the facts to the judge. The inquiry may include a preliminary investigation of the home and environmental situation of the child, his or her previous history, and the circumstances which were the subject of the information. To avoid duplication of effort and to take full advantage of all existing facilities, the report of any public agency, or of any private social agency licensed by the department of children, youth, and families, may be accepted by the court as sufficient evidence for the filing of a petition."
 Statutory Construction
Now that the relevant constitutional and statutory provisions, as well as the legislative history and evolution of the lower courts in Rhode Island have been discussed at length, this Court must engage in the process of statutory construction in making a determination as to the reach of this Court's jurisdiction in light of what has been conferred by statute on the Family Court. Chase vBouchard, supra, at 796. Article 10, section 2 of the Rhode Island Constitution provides that "[t]he inferior courts shall have such jurisdiction as may, from time to time, be *Page 15 
prescribed by law." The Rhode Island Supreme Court has broadly construed the authority of the General Assembly under section 2 of article 10 to enact legislation dictating the jurisdiction of the lower courts. State v. Byrnes, 456 A.2d 742, 744 (R.I. 1983);see also State v. Almonte, 644 A.2d 295, 300 (R.I. 1994) (state constitution "grants to the Legislature the authority to establish and prescribe the jurisdiction of any inferior courts");McCarthy v. Johnson, 574 A.2d 1229, 1232 (R.I. 1990) ("It cannot be disputed that the General Assembly has the power to confer jurisdiction upon the courts under our constitution").
The Defendants argue that subject matter jurisdiction for the matters described in Plaintiffs' complaint has been exclusively delegated to the Family Court. They refer specifically to the statute that created the Family Court, § 8-10-3, which provides in part:
 "Establishment of court — Jurisdiction — Seal — Oaths. — (a) There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine . . . those matters relating to delinquent, wayward, dependent, neglected, or children with disabilities who by reason of any disability requires special education or treatment and other related services." (Emphasis added.)
Defendants essentially argue that this action requires an interpretation of Chapter 16-19 of the General Laws of Rhode Island, which has been exclusively delegated to the Family Court. As such, Defendants maintain that the Superior Court lacks subject matter jurisdiction over this claim.
Furthermore, as previously indicated, Defendants have also suggested that there is potential to "create a constitutional confrontation between two co-equal state courts." (Defendant Administrators' Mem. in Supp. of Their Mot. to Dismiss at 2.)
Plaintiffs' allegations, as set forth above and in the complaint, involve various procedural violations that they claim frequently occurred within the Truancy Courts. Plaintiffs insist that *Page 16 
they do not challenge the Truancy Courts' specific determinations of waywardness or delinquency. In fact, Plaintiffs have continually maintained that they do not intend for the Superior Court to become involved in the merits of any Truancy Court matter, and they agree that resolution of any adjudication of waywardness is a matter delegated to the exclusive jurisdiction of the Family Court. However, Plaintiffs do maintain that notwithstanding the merits of any adjudication on the issue of waywardness, the Superior Court is the proper forum to obtain both declaratory and injunctive relief with regard to requiring the Chief Judge, Court Defendants, and the Family Court to adhere to the applicable state statutesthat outline the procedural rules that must be followed in any Truancy Court adjudication. (emphasis added).
 Supreme Court Jurisdiction — Supervisory Powers
Considering Defendants' suggestion regarding the potential for a "constitutional confrontation between two co-equal state courts," and also in light of the relevant provisions of § 8-1-2 relating to jurisdiction and supervisory powers of the Supreme Court, specifically providing: "The supreme court shall havegeneral supervision of all courts of inferior jurisdictionto correct and prevent errors and abuses thereinwhen no other remedy is expressly provided; it may issue writs of habeas corpus, of error, certiorari, mandamus, prohibition, quo warranto and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law. . . ." (emphasis added.), this Court must first analyze whether the subject-matter jurisdiction for this "constitutional confrontation" actually lies in the Supreme Court. When construing statutes, this Court's role is "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v Robinson, 972 A.2d 150, 158 (R.I. 2009) (quoting Such v. State, 950 A.2d 1150, 1155-56 (R.I. 2008)). It is well settled that when *Page 17 
the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings. Id. (quotingMoore v. Ballard, 914 A.2d 487, 490 (R.I. 2007)). Additionally, the Court is required to give effect to every word of a statute. See Local 400, International Federation of Technicaland Professional Engineers v. Rhode Island State Labor RelationsBoard, 747 A.2d 1002, 1005 (R.I. 2000). When the language of a statute expresses a clear and sensible meaning, a court should not look beyond it." Such v. State,950 A.2d 1150, 1158-59 (R.I. 2008) (quoting First Republic Corp.of America v. Norberg,116 R.I. 414, 418, 358 A.2d 38, 41 (1976)). The Supreme Court has frequently stated that when the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no need for statutory construction or the use of interpretive aids. The statute must be applied literally by giving the words their plain and ordinary meaning. Mauricio v Zoning Board of Review of City ofPawtucket, 590 A.2d 879, 880 (1991) (citing, O'Neil v.Code Commission for Occupational Safety and Health,534 A.2d 606 (R.I. 1987); Moore v. Rhode Island Share and DepositIndemnity Corp., 495 A.2d 1003 (R.I. 1985); Walsh v.Gowing, 494 A.2d 543 (R.I. 1985).
While the plain and ordinary meanings of the words "errors and abuses" described in § 8-1-2 would appear to encompass the concerns brought out in Plaintiffs' complaint, § 8-1-2 expressly qualifies the provision that the Supreme Court shall have general
supervision over all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy isexpressly provided. (emphasis added). The Rhode Island Supreme Court has, on different occasions, both assumed jurisdiction of a particular matter pursuant to § 8-1-2, and declined to exercise jurisdiction under the same section of law in a different matter.
In Cicilline v. Almond, 809 A.2d 1101, (2002), cases were consolidated where certain *Page 18 
state legislators[8] and a beneficiary of a government-funded housing program filed lawsuits in December 2001 challenging the propriety of the governor's alleged decision to freeze certain spending on an affordable housing initiative. The cases were set down for hearing in the Superior Court and the Governor sought a writ of certiorari in the Supreme Court. The Supreme Court granted the writ, consolidated the cases, and stayed the action in the Superior Court. The Supreme Court ultimately ruled that due to legislative enactments subsequent to the filing of the lawsuits providing for alternative sources of funding for the housing program, the matter had become moot.
While the matter was pending, some of the plaintiffs challenged the Supreme Court's jurisdiction pointing out that, pursuant to § 8-2-13, "the superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character." The Supreme Court ruled on the challenge stating:
 "Nevertheless, this Court retains the power of "general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided." G.L. 1956 § 8-1-2. We can also issue writs of certiorari "and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law." Id. In addition, we have "jurisdiction to adapt, to modify, or to frame new writs to meet the needs of the judicial system." Estate of Sherman v. Almeida, 610 A.2d 104, 106 (R.I. 1992). Thus, even though, when we issued the writ of certiorari, the trial court had not yet ruled in the Garabedian action except for scheduling a hearing thereon with the Cicilline/Graziano case to address unspecified matters relating to both complaints, this Court, in the exercise of the above-referenced powers, possessed jurisdiction over these actions that the Governor properly invoked when he petitioned the Court to issue a writ of certiorari to review the Superior Court's orders in these cases." *Page 19 
Ultimately the Supreme Court concluded:
 "Based on this statute, the above-described posture of these cases, and the Court's inherent constitutional power to superintend trial court proceedings, we grant the petition for certiorari, quash the Superior Court's previously entered orders, and remand both cases to the Superior Court with directions to enter final judgments dismissing the Garabedian and Cicilline/Graziano actions as moot."
In a different matter, the Supreme Court declined to exercise such jurisdiction. The case of Cronan ex. rel. State v. Cronan,774 A.2d 866 (2001) illustrates the point in the context of a private criminal prosecution wherein the defendant was convicted of the charge of simple assault in the Superior Court.[9]
On September 27, 1996, during an argument in their Barrington home, Mrs. Cronan claimed that defendant yanked her by the arm, shoved her, and kicked her. She swore out and filed a private criminal complaint against him in District Court on October 22, 1996, accusing him of assault. After arraigning defendant, the court transferred the case on January 30, 1997 to the Superior Court in accordance with Rule 23 of the District Court Rules of Criminal Procedure.[10] Thereafter, in the Superior Court, the defendant waived his right to a jury trial. When the case was reached for trial, a state prosecutor from the Attorney General's office, who was present in court, declined to prosecute the case upon learning that Mrs. Cronan was prepared to proceed with her own private attorneys serving as the prosecutors for her complaint. Thereafter, without any objection from defendant, Mrs. Cronan's privately employed counsel *Page 20 
prosecuted the assault charge against defendant, and the trial justice ultimately found him guilty as charged.Id. at 869.
After hearing and denying defendant's motions for arrest of judgment and a new trial, defendant pursued an appeal in the Supreme Court. Id. at 870. After the Supreme Court upheld the viability of private prosecution of misdemeanor complaints,Id. at 870 — 872, it also ruled, contrary to defendant's other arguments, that that the Superior Court properly possessed subject-matter jurisdiction over the criminal complaint.Id. at 872. The Supreme Court distinguished the federal precedents relied upon by the defendant in comparison to the general jurisdiction of the Superior Court and rejected the defendant's suggestion that the Superior Court, as a court of general jurisdiction, nevertheless lacked the authority and competence to hear and decide the charge in this case because a private complainant-rather than one affiliated with or authorized by the Attorney General-initiated and prosecuted this charge to judgment. Id. at 874. In rejecting the defendant's suggestion, the Supreme Court held the Superior Court possessed the jurisdiction to decide whether the defendant was guilty of the assault charge, even though no attorney from the Attorney General's office prosecuted this case to judgment. The Supreme Court noted that although an attorney from the Attorney General's office deferred to the complainant's private prosecutors when this case was reached for trial in Superior Court, this event did not cause the Superior Court's jurisdiction to lapse.[11] Id. at 874. In support of its position on the issue, the Supreme Court citedState v Souza, 456 A.2d 775, 779 (R.I. 1983) ("Absence of subject matter jurisdiction in the fundamental sense is anextreme determination when applied to a trial court of generaljurisdiction.") (citing Stump v. Sparkman,435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). *Page 21 
(Emphasis added here.) The Supreme Court went on to note that "[N]either the General Assembly nor the Rhode Island Constitution has conditioned the Superior Court's subject-matter jurisdiction in misdemeanor cases such as this one upon the Attorney Genera's prosecution of the case, and because defendant raised no issue concerning the sufficiency of the complaint, it fell within the competence and authority of Rhode Island's court of general jurisdiction to hear and determine the charge against defendant. Thus, we hold that the Superior Court possessed subject-matter jurisdiction in this case." Id. at 874.
The Supreme Court also felt that it was significant that theCronan case was not a case where the Attorney General had advised the Superior Court and the private complainant that, in the Attorney General's opinion, the charge should be dismissed or that the Attorney General's office wished to assume responsibility for prosecuting the case to judgment. Id. at 874. The Supreme Court noted that "[I]n other contexts we have stressed the unique position of the Attorney General in Rhode Island's constitutional system. Indeed, the essential powers of that office require it to be able to exercise its discretion and judgment concerning the prosecution of criminal charges, even in misdemeanor cases like this one." (internal citations omitted.) Id. at 874-75. The Supreme Court continued, "[T]hese cases explicitly affirm the proposition that the office of Attorney General possesses the exclusive power to dismiss criminal charges . . .and that its power to do so derives from article 9, section 1 of the Rhode Island Constitution." (internal citations omitted.) Id. at 875. The Supreme Court concluded its analysis by noting that the Attorney General may . . . "cause a criminal case, including one initiated via a private complaint, to be dismissed at any time before the imposition of sentence." (internal citations omitted.). Id. at 875.
The defendant also urged the Supreme Court to exercise its supervisory authority *Page 22 
contained in § 8-1-2 over the Superior Court and declare "that employment of interested private prosecutors is error so fundamental that any conviction gained by such a prosecution must be reversed without showing of actual prejudice."Id. at 876-77. After distinguishing the authorities cited by the defendant in support of his argument, and further noting that "the General Assembly has specifically provided for prosecutions based upon a complaint filed by a private individual", the Supreme Court declined to assume jurisdiction of the case. In support of its analysis, the Supreme Court expressly held,
 "[I]n sum, given the historical and statutory pedigree of private prosecutions in this state, as well as the particular procedural posture of this case, we decline to exercise our supervisory powers to establish a per se rule prohibiting private prosecutions like this one. Cf. State v. Jackson, 570 A.2d 1115, 1117 (R.I. 1990) (explaining that the Court's supervisory power "should be exercised with great restraint after balancing carefully the societal interests involved") (citing United States v. Payner, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980))." (emphasis added). Id. at 877.
 Supreme Court Jurisdiction — Certified Questions
The General Assembly has statutorily authorized procedures to allow for the certification of certain questions to the Supreme Court for determination. The statutes allow for the certification of such questions on an agreed statement of facts[12], as well as certification of questions of importance.[13] The Supreme Court has decided numerous issues on such certifications. But see *Page 23 Employers Mutual Casualty Company v. Martin,671 A.2d 798, 802 (1996) where the Supreme Court, after making a determination that an existing auto insurance policy's uninsured motorist coverage was not automatically cancelled by the insured's purchase of a new policy, added the following cautionary note calculated to get the attention of all those involved in the case:
 "Before concluding, we take this opportunity to reiterate this Court's earlier caveats in respect to certified questions. Section 9-24-27 provides:
 `Whenever in any proceedings * * * in the superior court or in any district court, any question of law shall arise * * * which in the opinion of the court * * is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined.'
 It is well settled that under § 9-24-27 questions should not be certified `without careful consideration being given as to whether they were really as perplexing as they might at first seem.' Richardson v. Bevilacqua, 115 R.I. 49, 52, 340 A.2d 118, 120 (1975)
(citing Jerome v. Pratt, 111 R.I. 56, 298 A.2d 806 (1973)). This Court has emphasized that `[t]hat kind of careful consideration is a precondition to certification under the statute, but, even then, a trial justice should not certify unless, after first having had the benefit of adequate research by counsel and informed arguments, he [or she] continues to entertain such doubts concerning the question that he [or she] feels unable to resolve it satisfactorily.' Id. This Court has consistently refused `to encourage short-circuiting of proper trial procedure by entertaining improperly certified questions' in circumstances in which certification was `motivated primarily by the desire of the parties to reach promptly a final decision by this court.' Id. at 53, 340 A.2d at 120."
The longstanding precedent in the jurisdiction provides that certification should not be made of a constitutional question until it has been brought formally upon the record. Carroll v.Chrupcala, 53 R.I. 11, 162 A. 852 (1932). *Page 24 
The law further requires that constitutional questions must be raised on the record with particularity and clarity in order to be certified to the Supreme Court for decision. Stateex. rel. Widergren v. Charette,110 R.I. 124, 127, 290 A.2d 858, 860 (1972). In decidingWidergren, the Supreme Court also noted:
 "We have said that the statute does not contemplate the certification of a constitutional question simply because at first glance it appears to be difficult of resolution. Tillinghast v. Johnson, 34 R.I. 136, 139, 82 A. 788, 790 (1912). We have stated frequently that questions should be referred to this court under certification statutes only when they are of doubt and importance and not then `* * * unless and until the trial justice, after careful consideration, aided by the research and arguments of counsel is unable to reach a satisfactory conclusion * * *.' State v. Walsh, 108 R.I. 518, 523, 277 A.2d 298, 301 (1971)." Id.
 Supreme Court — Writs of Certiorari, Prohibition and Habeas Corpus
The Court Defendants have suggested that review is available to the Plaintiffs in the Supreme Court by way of a Writ of Certiorari and Habeas Corpus.[14] While the specific writ of prohibition has not been suggested or otherwise discussed in any of the memos thus far, this Court undertook a consideration of that writ as well given that it is specifically included in General Laws § 8-1-2 among the extraordinary and prerogative writs.
 Writ of Certiorari
Notwithstanding any difficulties the Supreme Court may encounter on certiorari if there is an inability to produce an adequate record of the proceedings in the Truancy Court, [15] the prerogatives of both certiorari and prohibition are discretionary in nature and the Supreme Court might decline to grant either writ. That would leave the Plaintiffs without any remedy. This *Page 25 
Court would speculate that in such a case, the Supreme Court would make some indication that the Court Defendants must adhere to must adhere to minimum procedural requirements and remand for some kind of a record. See e.g. Moseby v Devine,851 A.2d 1031 (2004), where the Supreme Court reviewed on appeal, a Superior Court denial of the administrative appeal related to the denial of an individual's application for a handgun permit by the Department of Attorney General. After discussing the constitutional implications of handgun ownership and the permitting process, the Supreme Court held that while the denial was not reviewable by the taking an administrative appeal under the Administrative Procedures Act, review was available in the Supreme Court through a common law writ of certiorari. Id. at 1050-1051. The Supreme Court also indicated that at a minimum, the Attorney General must adhere to minimum procedural requirements when rejecting such applications and must disclose to the applicant the evidence uponwhich the department based its decision and the rationale for thedenial in order to conduct a review of the decision for error oflaw. Id. at 1051. (emphasis added).
 Writ of Prohibition
This Court originally researched whether a Writ of Prohibition might be the proper vehicle to utilize in this case. The ordinary purpose of a Writ of Prohibition is to restrain an inferior tribunal from acting without jurisdiction or in excess of its jurisdiction, and will not be granted when a petitioner therefor has an adequate remedy by review, if the inferior tribunal should so act.McLaughlin v. McLaughlin, 44 R.I. 429, 117 A. 649 (1922). In that case, the Supreme Court granted the writ because of the particular nature of a divorce proceeding, and there was no appeal to the Rhode Island Supreme Court at that time. Id. 650. As a result, the petitioner might be left without adequate relief by the ordinary methods for review. Id. 650.
Moreover, a Writ of Prohibition rests in the discretion of the Supreme Court and, under *Page 26 
the practice in this State, is rarely granted where there is another adequate remedy. Narragansett Racing Ass'n v. Kiernan,59 R.I. 90, 104, 194 A. 692, 700 (1937). In the case of Fox vPersonnel appeal Board of the City of Cranston,98 R.I. 46, 199 A.2d 585 (1964), the Rhode Island Supreme Court declined to issue a Writ of Prohibition to a police officer seeking to prevent a hearing on departmental charges of neglect of duty and conduct unbecoming a police officer. The Supreme Court noted that the writ was issued rarely and almost never when any other remedy was available. The Supreme Court noted that injunctive relief was available in equity and more commensurate with the circumstances of the case than the extraordinary Writ of Prohibition.Id. 98 R.I. at 47, 199 A.2d 586.
 Writ of Habeas Corpus
The specific example provided to this Court by Defendants in an appendix to their filings clearly demonstrates that the Writ of Habeas Corpus would adequately serve to release someone from custody. Besides the fact that this remedy is also discretionary, resort to this remedy would require that an individual actually be in custody. The Writ, while it could be combined with other petitions to review errors, would not be useful to review situations where error was alleged but there was no remand to custody. While this Court has not interpreted the Defendants' suggestion regarding this Writ as all-encompassing, the need to combine two discretionary writs related to error review and release from custody leave this Court questioning the adequacy of what may amount to remedy by piecemeal litigation.
 Complete Delegation of Jurisdiction to Family Courtor Equitable Jurisdiction in Superior Court?
In order to answer the above question regarding whether the matters described in the complaint have been completely delegated to the Family Court, or whether they remain subject *Page 27 
to the equitable jurisdiction of the Superior Court, it is first necessary to articulate with a high degree of precision exactly what the Plaintiffs would like the Superior Court to do. The analysis will contain several components including scrutiny of the Plaintiffs' complaint and their specific prayers for relief, examination of each particular statute that relates to each of Plaintiffs specific claims for relief; the plain meaning of the words in each instance, and the process of statutory construction if there is an ambiguity after considering the plain meaning of the words.
It is important to note at this juncture that while both sides in the instant dispute have cited court rules in support of their respective positions in addition to statutes, and while § 8-6-2(a) specifically provides that a court rule, when effective, shall supersede any statutory regulation in conflict therewith, Tonetti Enterprises, LLC v. Mendon Road LeasingCorp., 943 A.2d 1063, 1071 (R.I. 2008), it is a well-established principle that procedural rule-making authority may not be used to expand a court's jurisdiction. The United States Supreme Court has stated:
 "An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction; and the Act * * * authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts." United States v. Sherwood, 312 U.S. 584, 589-90 (1941).
The Rhode Island Supreme Court specifically embraced this concept inState v. Robinson et als, 972 A.2d 150, 158-59 (R.I. 2009), expressly holding that the District Court "simply does not have the authority to promulgate a rule that expands the jurisdiction of the District Court because that is a right that lies solely within the province of the General Assembly." *Page 28 
 Equitable Powers and Plaintiffs' Complaint
While it is clear that the Superior Court has equitable powers, our Supreme Court has previously indicated that the Family Court has no general equitable power. In re Stephanie B.,826 A.2d 985, 993 (R.I. 2003); Waldeck v. Piner,488 A.2d 1218, 1220 (R.I. 1985); Britt v. Britt,119 R.I. 791, 794-95, 383 A.2d 592, 594 (1978). The Court has also noted that the Family Court is not "vested with [the] equitable authority to enjoin a non-party over whom it ha[s] no personal jurisdiction or to issue orders that it ha[s] no power to enforce."In re Stephanie B., 826 A.2d at 993.
 Specific Prayers for Relief
The Plaintiffs' complaint, in Part IX, entitled "Prayer for Relief," sets forth the specific prayers for relief beginning at page 68. A review of Plaintiffs' specific claims against Court Defendants, only in an order arranged for ease of discussion, reveals:
 • a prayer for Declaratory Judgment against Defendant Court Administrators that failing to make and provide a stenographic or other verbatim record of all proceedings before the Truancy Court is a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and Art. 1, Sec. 2 of the Rhode Island Constitution and under R.I. Gen. Laws § 8-10-3 (b); and a preliminary and permanent injunction and order prohibiting Defendant Court Administrators from allowing Truancy Court proceedings that are not transcribed and/or recorded;[16]
 • A Declaratory Judgment[17] against Defendant Magistrates that engaging in ex parte communications with school officials to ascertain whether children members of the plaintiff class are violating the terms and conditions of the Truancy Court is a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and Art. 1, Sec. 2 of the Rhode Island Constitution;[18]
 • A Declaratory Judgment against Defendant Court Administrators that the filing of a Truancy Petition before the Intake Department has determined that the petition is legally sufficient on its face and that further action is in the best interest of the public and the child is a violation of the plaintiffs' rights under §§ 14-1-10, 14-1-11, and R.I. R. Juv. P.3 and 5; and a preliminary and permanent injunction and order prohibiting Defendant Court Administrators from filing truancy petitions submitted by school officials . . . without first investigating those petitions to determine their *Page 29 
legal sufficiency and determining that further action is in the best interest of the child and the public;[19]
 • A Declaratory Judgment against Defendant Magistrates that the arraignment and issuance of orders against members of the plaintiff class over whom personal jurisdiction is not established is a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and Art. 1, Sec. 2 of the Rhode Island Constitution; and a preliminary and permanent injunction and order prohibiting Defendant Magistrates from issuing orders against such class members;[20]
 • Plaintiffs further ask for a Declaratory Judgment[21] against Defendant Magistrates that
 — failing to provide information necessary at the arraignment;
 — failing to obtain knowing and voluntary waivers of procedural due process protections by parents and students appearing before the Truancy Court; and
 — permitting children [sic] members of the plaintiff class to waive their right to counsel without first consulting with counsel
 is a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and Art. 1, Sec. 2 of the Rhode Island Constitution, R.I. R. Juv. P. 9, and R.I. Gen. Laws § 14-1-31.[22]
 • A Declaratory Judgment against Defendant Court Administrators that failure to provide interpreters to individuals appearing before the Truancy Court is a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and Art. 1, Sec. 2 of the Rhode Island Constitution, and R.I. Gen. Laws § 8-19-3; and a permanent[23] injunction requiring Defendant Court Administrators to provide certified interpreters to those parties that require it before a hearing.[24]
 Analysis of Plaintiffs' Prayers for Relief Requirement of a stenographic or other verbatimrecord:
Plaintiffs' cite § 8-10-3 (b) in support of their contention that failing to make and provide a stenographic or other verbatim record of all proceedings before the Truancy Court is a violation of Plaintiffs' rights. The statute specifically provides:
 "(b) The family court shall be a court of record and shall have a seal which shall contain such words and devices as the court shall adopt." *Page 30 
There is another statute contained in Chapter 8-10 relating to stenographic or other electronic reporting. Section 8-10-37 specifically provides:
 § 8-10-37 Report of trials — Transcripts. — Subject to the provisions of § 8-10-21, court reporters shall report stenographically, or court recording clerks or similar recording personnel shall report electronically, the proceedings in the trial of every action or proceeding, civil or criminal, in the family court. Each court reporter or court recording clerk or similar recording personnel shall also, upon the order of any justice of the court, transcribe or otherwise reproduce his or her report to be filed with the papers in the case. He or she shall also make a transcript or otherwise reproduce the whole or any part of the report upon the written request, filed with the clerk, by either party to the action or proceeding, and when completed and within the time limited by the court for filing the transcript, shall immediately deliver the same to the party ordering it, or to the attorney of record of the party, and in the case of transcription by court reporters for such service shall be paid a reasonable compensation, not less than five dollars ($5.00) and not exceeding three dollars ($3.00) per page for originals and one dollar and fifty cents ($1.50) per page for copies thereof to be allowed by the court; and, in case the transcript is used in subsequent proceedings in the cause, the cost of the transcript may be allowed as part of the costs. In the case of electronic court recordings the person making the recordings or another person so designated by the court may be requested or ordered, in lieu of making a transcript, to reproduce the recording and certify its authenticity, and in such case each party requesting the reproduction shall pay to the court the sum of ten dollars ($10.00) per cassette.
The parties could not be further apart on this issue. Plaintiffs argue that without such a transcript, there can be no meaningful appeal. Cases supporting that proposition in this jurisdiction are legion. See e.g. Resendes v Brown;966 A2d 1249, 1256-57 (2009) ("The Family Court is a court of record, G.L. 1956 § 8-10-3(b), and the business of the court should not ordinarily be conducted by chamber conferences because this practice results in an "absence of evidence and fact-finding.").See also In re Stephanie B., 826 A.2d 985, 991 (R.I. 2003). ("Although we recognize that the volume of cases that come before this tribunal may dictate *Page 31 
frequent chambers conferences, such in camera proceedings may not serve to supplant the adversarial process.").
The Rhode Island Supreme Court has indicated on numerous occasions that without a record, there can be no meaningful review.See e.g. State v Medeiros, 996 A.2d 115, 120 (2010) ("[W}e are troubled by the absence from the record of the trial justice's reasoning underlying [the] ruling on the admissibility of the witness statement. The discussions between the trial justice and the parties about the admissibility of this evidence occurred in chambers without the presence of a stenographer and, therefore, were not on the record. The defendant faults the trial justice for failure to place on the record the reasons behind her ruling on admissibility. However, it is the responsibility of the party claiming the error to provide a complete record so that this Court may weigh the merits.") (internal quotation marks eliminated.) Other cases include Shorrock v. Scott,944 A.2d 861, 864 (R.I. 2008) ("It was [the] defendant's responsibility to provide those portions of the trial transcript that are necessary for this Court to perform a meaningful review.");State v. Pineda, 712 A.2d 858, 861 (R.I. 1998) (declining "to overlook the glaring defects in [the] record" furnished by the petitioner). (In our opinion, defendant had a responsibility to request that the trial justice place the rationale for her reasoning on the record. He does not contend that she refused to do so. Therefore, "[i]n the absence of the transcript or other adequate record of the proceedings in the court below, we are unable to consider the issues raised by [the] defendant's appeal."),State v. Jennings,117 R.I. 291, 294, 366 A.2d 543, 545 (1976).
There are still other cases expounding on the subject includingNotarantonio v. Notarantonio,941 A.2d 138, 150 (2008) ("plaintiffs have not provided this Court with a sufficient record to address this concern on appeal. We are unable to locate in the record any *Page 32 
order relative to an award of costs. It is the responsibility of the appellant to provide this Court with the appropriate record, transcripts, and orders to provide meaningful review on appeal. This Court consistently has stated "that an incomplete record on appeal precludes any meaningful review by this Court."); Riley v.Stone, 900 A.2d 1087, 1094 (R.I. 2006) (citing State v.Pineda, 712 A.2d 858, 860 (R.I. 1998) See also Calise vCurtain, 900 A.2d 1164, 1169 (2002) ("It is well established that `[t]he failure to provide the Supreme Court with a sufficient transcript precludes a meaningful review and leaves us no alternative but to deny the appeal and uphold the trial justice's findings.' Bergquist v. Cesario,844 A.2d 100, 108-09 (R.I.) cert. denied542 U.S. 925, 124 S.Ct. 2888, 159 L.Ed.2d 786 (2004) (quotingPatterson v. Patterson,792 A.2d 746, 747 (R.I. 2002) (mem.). A meaningful review of the issue in this case is precluded by defendants' failure to supply this Court with a timely transcript of the hearing on the motion for summary judgment. Accordingly, we leave this issue for another day in another case.")
The danger that concerns Plaintiffs, as outlined in their memoranda, involves the inability to obtain a meaningful review during a Supreme Court proceeding on Appeal, Certiorari, Habeas Corpus, [25] or even pursuant to an appeal of an order of a magistrate to a justice of the family court. (see G.L. 1956 § 8-10-3.1 (d)).
Defendants, in their memoranda, seriously contest that § 8-10-3 (b) requires stenographic or other electronic recording of Truancy Court proceedings. In support of their contention, they refer this Court to § 8-10-37 (set forth above) which requires stenographic or other electronic recording of the "proceedings in the trial of every action or proceeding, civil or criminal, in the family court." (emphasis added). The Defendants maintain that a "court of record" does not automatically mean that a transcript of every proceeding is required. See Defendants Jeremiah, *Page 33 
Asquith, Hastings, Newman, Paulhus and Wright's Reply Memorandum in Support of their Motion to Dismiss at p. 14, Footnote 14 wherein the Defendants provide the following authority:
 A "court of record" is a court who issue [sic] has "a seal, a power to fine and imprison within defined limits, proceeds according to the common law, keeps a record of its proceedings and its judgments both civil and criminal." Colagiovanni v. District Court of the Sixth Judicial District, 133 A. 1, 2 (RI 1926) (separately noting the District Court is a Court of Record). Courts of record are named such because there is an official and unquestionable record of "all proceedings, judgments, orders and decrees." Id.; see also
R.I.G.L. § 8-4-8. These records are kept in the form of docket (or jacket) sheets, (whether in paper form or electronic) which record the dates of the hearings and the matters dealt with on a particular date, the pleadings, copies of motions and papers filed in a case and the entry of decisions made along with copies of any written orders and decisions. See RIGL § 8-4-8; Ambrosino v. Casey, 166 A.2d 888, 890-91 (RI 1961); N.Y. New Haven and Hartford R.R. Co., v. Superior Court, 115 A.2d 534 (RI 1955). "A court of record necessarily requires some duly authorized person to record proceedings. And such person in our district court is the clerk." Colagiovanni, supra at 2., (internal citations omitted and emphasis added); see RIGL 8-8-16 ((Duties of district court clerks — Every clerk of the district court shall record reasonably the judgments and determinations of the court . . ."). Id. at p. 14 Footnote 14.
Defendants further maintain in said memorandum that:
 "[A]ppeals have been filed from time immemorial without transcripts or verbatim records. E.g. Cavanaugh v. Cavanaugh, 375 A.2d at 917; In re Gault, 387 U.S. 1, 58 (1967) (declining to rule on the question of whether a transcript is necessary to ensure due process and determining habeus challenge without a transcript of original proceeding). As a statutory matter, a transcript is only required as a report of a case in Family Court during a trial, and not for other matters. RIGL 8-10-37 (Calling a transcript a "Report of trials-Transcripts" and not a record); While a transcript may be useful, it is not always necessary, especially when the question posed for appeal is reviewed de novo. See Mann v. Commonwealth, 271 N.E.2d 331, 332-33 (Mass. 1971) ("Thus, in effect, by appeal the defendant has `two bites at the cherry. If he prefers not to disclose his defence in the District Court he can hear *Page 34 
the Commonwealth's case and, if convicted, appeal. He can achieve the same result by admitting to a finding, claiming an appeal if dissatisfied with the sentence, and thereby obtaining a trial de novo upon a clean slate.") Appeals from the Truancy Court go to the Chief Judge, now acting Chief Judge Bedrosian, for a de novo full hearing and such a process was, and remains, readily available to the plaintiffs to procure relief. Family Court Administrative Order 2008-01." Id. at page 21. (emphasis added by this Court). (Footnote 20 and accompanying text in Defendants' memo omitted here).
As previously indicated, § 8-10-3.1, entitled "Magistrates — Appointment, duties, and powers", specifically provides in subsections (d) and (e):
 (d) A party aggrieved by an order entered by a magistrate shall be entitled to a review of the order by a justice of the family court. Unless otherwise provided in the rules of procedure of the family court, such review shall be on the record and appellate in nature. The family court shall by rules of procedure establish procedures for review of orders entered by a magistrate, and for enforcement of contempt adjudications of a magistrate.
 (e) Final orders of the family court entered in a proceeding to review an order of a magistrate may be appealed to the supreme court."
 Concern With Statutory Construction — EvidentiaryHearing
Notwithstanding the apparent ambiguity regarding the requirement of a stenographic recording of Truancy Court proceedings, this Court is also faced with the question of whether the Superior Court has the jurisdiction to engage in the statutory construction necessary to resolve the issue. Section 14-1-5 provides in relevant part that the Family Court shall have exclusive originaljurisdiction in proceedings:
 "(1) Concerning any child residing or being within the state who is: (i) delinquent; (ii) wayward; . . ." (emphasis added).
Those individuals who violate the compulsory attendance laws set forth in General Laws Chapter 16-19 are "deemed a wayward child as provided in chapter 1 of title 14, and shall be *Page 35 
subject to all the provisions of chapter 1 of title 14, and may be proceeded against and dealt with as a wayward child in accordance with the provisions of chapter 1 of title 14."See § 16-19-6, set forth above.
Given the specific language including the word "concerning" set forth in § 14-1-5, this Court looks at the definition of the word in the context presented. The word, "concerning", means "about; regarding; on the subject of."[26] While it is clear that the Family Court has "exclusive original jurisdiction" (§ 14-1-5) "concerning" (about; regarding; on the subject of) a wayward child, it is not at all clear on the pleadings alone, on the precise wording of the statutes alone, and given that the issue is extremely abstract, [27] whether the Superior Court can definitively say that it does not have jurisdiction at this time without an evidentiary hearing. Testimony and other evidence brought out at an evidentiary hearing would shed light on the custom and practices of the Family Court and help to develop the precise limits of this mixed question of law and fact as to whether the Superior Court can order the Family Court Administrator Defendants to ensure[28]
that all Truancy Court proceedings are recorded by stenographic or electronic means. The Judicial Defendants acknowledge the potential for this Court to engage in limited fact finding regarding the issue of subject matter jurisdiction as well. (See Judicial Defs.' Mem. in Supp. of Their Mot. to Dismiss at 4.)
Plaintiffs have also prayed for a declaratory judgment, as well as preliminary and permanent injunctive relief. The claim for declaratory relief is made pursuant to R.I. Gen. Laws § 9-30-1 et. seq. This particular form of relief is available in both the Superior Court and Family *Page 36 
Court at the present time. (emphasis added).See § 9-30-1, providing:
 "§ 9-30-1 Scope. — The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."
While the chapter specifically allows for a declaration in either affirmative or negative form, the section has consistently been interpreted to lack specific authorization for injunctive relief.See Parente v. Southworth, 448 A.2d 769, 772 (R.I. 1982). Nevertheless, a claim for injunctive relief may be joined with the demand for declaratory relief under the liberalized provisions for joinder under Rule 18 and Rule 20 of the Superior Court Rules of Civil Procedure. Id. at 772. Any decision to grant or deny relief under the act is discretionary. See Cruz v. WausauInsurance, 866 A.2d 1237, 1240 (R.I. 2005).
This Court is aware of at least one precedent in the case ofBerberian v. O'Neil, 111 R.I. 354, 302 A.2d 301, (1973). In that case, an attorney brought declaratory judgment action seeking a ruling that the administrator of Family Court had no authority to issue directive requiring payment of a ten-dollar fee for each divorce petition filed in Family Court. The Superior Court denied the attorney's motion for summary judgment and entered judgment for defendant, and the attorney appealed. The trial justice rested his action on three grounds. They were: (1) his doubt that the administrator had promulgated a rule calling for the payment of the ten-dollar fee; (2) his belief that when the General Assembly in 1971 authorized the increase of certain fees charged in the Superior Court, it actually had in mind fees payable to the Family Court; and (3) his thought that the Superior Court could not review the rules of the Family Court. Id.111 R.I. at 356, 302 A.2d at 302-03. *Page 37 
The Supreme Court reversed holding that the trial justice erred. The trial justice had observed that, since the Superior Court's jurisdiction in the field of domestic relations had been transferred in 1961 to the Family Court, the reference to `in domestic relations' means the Family Court. 111 R.I. at 358, 302 A.2d at 303. The General Assembly, at the January, 1971 session, enacted P.L. 1971, Ch. 147 into law. Attached to the bill was an explanation of its contents. The explanation, which was prepared by the Legislative Council, states that the bill would increase the fees charged in the Superior and District Courts. The portion of the bill that is relevant to this appeal reads as follows:
 `Section 1. Sections 9-29-18 and 9-29-1 of the general laws in chapter 9-29 entitled `Fees' are hereby amended to read as follows:
 `9-29-18 Superior Court Fees.-The superior court shall be allowed the following fees in full to be taxed in the bill of costs in every civil action: For the entry of every action, bill or petition at law, in equity, in domestic relations or other civil action. . . . $10.00.' Id. 111 R.I. at 357, 302 A.2d at 303.
Ultimately the Supreme Court, construing all relevant statutes, held that the obvious purpose of the amendment was to increase the fees charged in the Superior Court; and the defendant would gain no benefit from other statutes containing a linkage between the Family Court and Superior Court given the precise wording of those statutes. Id. 111 R.I. at 358, 302 A.2d at 303. The Supreme Court also noted "The trial justice's reluctance to sit in judgment of the internal business affairs of the Family Court is understandable. However, this is a declaratory judgment action. Jurisdiction to entertain such proceedings is vested solely in the Superior Court. Section 9-30-1."[29]
 No Dismissal for Want of Jurisdiction without Evidentiary Hearing *Page 38 
Given that Defendants have not filed answers denying any of the allegations contained in the complaint, and also given that Plaintiffs have joined a claim for equitable relief that is clearly not within the jurisdiction of the Family Court, the issue is one this Court will decline to dismiss at this stage on grounds of a failure of subject-matter jurisdiction. While theBerberian case dealt only with a declaratory judgment action at a time when such an action was vested solely within the jurisdiction of the Superior Court, in this instance, the Superior Court, sitting in equity, being a court of general equity jurisdiction, has the right and duty in the first instance to pass on its own jurisdiction. Poirier v. Quinn,83 R.I. 98, 113 A.2d 642 (1955). This Court noted earlier that, in determining whether there is subject matter jurisdiction, it will be necessary to have the Plaintiffs articulate with a high degree of precision exactly what the Plaintiffs would like the Superior Court to do. With regard to the prayer for declaratory and injunctive relief, Plaintiffs have prayed that this Court issue such relief against the Defendant Family Court Administrators. This Court will not speculate on all of the nuances related to such relief at this stage in order to avoid having the exact proofs specifically tailored to such speculation at future proceedings on the issue. In conducting this future inquiry, this Court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.See e.g. Valentin v. Hospital Bella Vista,254 F.3d 358, 363 (1st Cir. 2001) and cases cited therein.
 Recent Change in the Family Court Policy
As of September 17, 2010, the acting Chief Judge of the Family Court indicated that digital recorders will be used in all Truancy Court proceedings when it resumes operation in schools on October 4, 2010. *Page 39 
 Ex-Parte Communications
Notwithstanding this Court's earlier determination regarding the Code of Judicial Conduct, (see Footnote 1, supra indicating this Court had no jurisdiction over such claims), the Plaintiffs have only asked for a declaratory judgment on this issue. As indicated above, the Family Court also has the ability to issue a declaratory judgment (Footnote 26, supra), however, while Rule 57 is contained in the Rules of Procedure for Domestic Relations, there is no like provision in the Rules of Juvenile Proceedings. While it remains to be determined on precisely what terms and conditions, and exactly when such conduct occurred, it is important to note that the Rhode Island Supreme Court has issued an opinion regarding ex-parte communication. See Arnold v.Lebel, 941 A.2d 813 (2007). In the specific context described inArnold, (disabled adults' applications to Department of Human Services for assistance benefits), the Supreme Court held that G. L. 1956 § 42-35-13 of the Administrative Procedures Act, (APA) prohibited ex-parte communications with anyone about contested or material adjudicatory facts or opinions concerning the merits of an applicant's administrative appeal. Id. at 820. The Court went on to hold that the function of the statutory requirement was to prevent litigious facts from reaching the decision-maker off the record in an administrative hearing. Id. at 820. The Court did, however, indicate that the same statute specifically authorized hearing officers to engage in ex-parte communication with agency staff members about general matters pertaining to the discharge of his or her duties. Such general matters would include private communications concerning procedure or timing. Id. at 821. Finally, the Supreme Court indicated that in accordance with two (2) other specific sections of the APA, [30] that the hearing officer must provide notice to the parties before a hearing if he or she intends to consult any documentary *Page 40 
source or person concerning facts or opinions about the merits of an appeal. In addition, the parties must be afforded an opportunity to contest any such evidence and to cross-examine any people consulted. The Supreme Court noted that this was similar to the regulations followed by many federal agencies. Id. at 821. See alsoChamplin's Realty Associates v. Tikoian, 989 A.2d 427 (2010), where the Rhode Island Supreme Court analyzed a host of various ex-parte communications occurring in the context of an administrative appeal of a decision of the Coastal Resources Management Council (CRMC).The ex parte communications occurred between the chairman and other CRMC members, as well as between the chairman, various CRMC members, and others not on the CRMC. While noting that engaging in ex-parte contacts alone does not automatically render a decision maker biased, the Supreme Court discussed the obligation of impartiality for any administrative agency carrying out a quasi-judicial function and specifically noted that "under theFourteenth Amendment, administrative tribunals must not be biased or otherwise indisposed from rendering a fair and impartial decision."Id. at 443. (citations omitted). Given the details still needing full context, this Court declines to dismiss for lack of subject matter jurisdiction.
 Intake procedures, arraignments, orders subsequent to arraignment, personal jurisdiction
Plaintiffs have prayed for a declaratory judgment and preliminary and permanent injunctive relief against Defendant Court Administrators relative to the arraignment procedures. The two sections of law dealing with arraignment procedures provide in relevant part:
 "§ 14-1-10 Preliminary investigation on information furnished to court. — Except in case of emergency detention, whenever any appropriate person shall give to the court information in his or her possession that a child is within the provisions of this chapter, it shall be the duty of the court to make a preliminary investigation to determine whether the interests of the public or of the child require that further action be taken, and to report its findings together with a statement of the facts to the judge. The inquiry may include a *Page 41 
preliminary investigation of the home and environmental situation of the child, his or her previous history, and the circumstances which were the subject of the information. To avoid duplication of effort and to take full advantage of all existing facilities, the report of any public agency, or of any private social agency licensed by the department of children, youth, and families, may be accepted by the court as sufficient evidence for the filing of a petition." (emphasis added).
 And,
 "§ 14-1-11 Authorizing and filing petition. — (a) The filing of the petition constitutes assumption of jurisdiction over the child. Filing shall take place upon authorization by the intake department upon completion of its procedures pursuant to Rule 3 of the Rules of Juvenile Proceedings, upon authorization by a justice of the family court pursuant to Rule 4 of the Rules of Juvenile Proceedings, or immediately upon appearance of the child before the court following emergency detention, unless the court otherwise orders." (emphasis added)
Plaintiffs aver that the filing of petitions without a determination by the intake department that a petition is "legally sufficient on its face and that further action is in the best interest of the public and the child" is a violation of the Plaintiffs' rights.[31] While the precise facts and their context must yet be determined, a cursory examination of the above statutes (see underlined sections) appears to give the Family Court some discretion regarding accepting a report from "any public agency" as set forth in § 14-1-10 and the disjunctive "or" . . . "unless the court orders otherwise" in § 14-1-11. This Court notes that our Supreme Court has held that such investigations serve primarily to shield the child from arbitrary bureaucratic action and also to forestall the Family Court from assuming jurisdiction when such would ill serve the interests of the juvenile and the public.In re Leon, 122 R.I. 548, 410 A.2d 121 (1980). While preliminary and permanent injunctive relief are not available in the Family Court, In re Stephanie B., supra, this Court is still concerned with the language of § 14-1-5 providing, in relevant part *Page 42 
that the Family Court shall have exclusive original jurisdiction in proceedings "(1) Concerning any child residing or being within the state who is: (i) delinquent; [or] (ii) wayward", (emphasis added), and whether the statutory construction should be undertaken in the Family Court or the Superior Court.
This Court must also examine the statutory authority of the Defendant Administrators. The statute specifically provides:
 § 8-10-15 Family court administrator. — (a) There shall be a family court administrator who shall be appointed by the chief judge of the family court in his or her capacity as administrative judge of the court, with the advice and consent of the senate, and who shall hold office for a term of five (5) years.
 (b) Under the general supervision of the chief judge of the family court, within the policies established by the court, the administrator shall:
 (1) Prepare an annual budget for the court;
 (2) Formulate procedures governing the administration of court services;
 (3) Make recommendations to the court for improvement in court services;
 (4) Collect necessary statistics and prepare the annual report of the work of the court;
 (5) Provide supervision and consultation to the staff of the court concerning administration of court services, training and supervision of personnel, and fiscal management;
 (6) Perform such other duties as the chief judge shall specify;
 (7) And further to assume and perform, in addition to any other duties provided by this chapter, the powers, authority, and the duties of the family court clerk, pursuant to the provisions of the general laws, and shall do and perform all other things which by law or the rules of the court shall appertain to the office of clerk." (emphasis added). *Page 43 
The above section must be read in conjunction with § 8-10-14 providing for the Administration of the Family Court. The section specifically provides:
 "§ 8-10-14 Administration of operation of family court. — The chief judge of the family court shall be the administrative judge of the court. He or she shall be the head of the court and have supervision and control of the calendars and of the assignment of the justices. All court stenographers, secretaries, and masters shall be under his or her supervision. It shall be his or her duty to gather such statistics as shall reflect accurately the work of the court, for the information of the court and such other use as he or she may deem expedient. He or she shall also be charged with general responsibility for any recommendations he or she may believe important for the work of the court or any officers in any way connected therewith." (emphasis added).
A review of the above sections clearly indicates that the Defendant Administrators are not vested with unfettered discretion. The limits of their discretion are the proper subject of an evidentiary hearing in the context of any motion to dismiss.
Plaintiffs have also included a prayer for declaratory judgment and preliminary and permanent injunctive relief against the Defendant Magistrates relative to the arraignment and issuance of court orders against members of the Plaintiff Class over whom personal jurisdiction has not been established. Plaintiffs seek a declaration that such activity is a violation of their Due Process rights under both the United States and Rhode Island Constitutions. As set forth above, pursuant to § 14-1-11, the filing of a petition constitutes assumption of jurisdiction over the child. Section 14-1-16 provides for a summons to issued to at least one parent or guardian if at all possible.
 § 14-1-16 Summons of child or adult in charge of child. — Upon the filing of a petition, the justice, if satisfied that there is reasonable cause for the petition, may issue a summons requiring the child to appear before the court at a time and place named in it, *Page 44 and shall also cause a summons to be issued to at least one of the parents of the child if either of them is known to reside within the state, or if there is no parent, then to the guardian or other lawful custodian of the child, if there is one known to be so resident, and, if not, then to the person with whom the child resides, if known." (emphasis added).
The word "shall" usually connotes the imperative and contemplates the imposition of a duty. Brown v Amaral,460 A.2d 7, 10 (R.I. 1983). While it appears that a petition would automatically provide for a summons to bring the adult properly before the Family Court, the actual policy of the Truancy Court in this respect is unclear in the context of the complaint. This Court also has the same concern with the language of § 14-1-5 providing, in relevant part, that the Family Court shall have exclusive original jurisdiction in proceedings "(1) Concerning any child residing or being within the state who is: (i) delinquent; [or] (ii) wayward", (emphasis added), and whether the statutory construction should be undertaken in the Family Court or the Superior Court. (discussed above).
Regardless of which court should undertake the statutory construction, the law regarding a failure to duly serve an individual is fairly clear in this jurisdiction. It is a fundamental principle of procedural due process "that a court may not issue a judgment or order against a person in the absence of personal jurisdiction." In re Stephanie B.,826 A.2d 985, 993 (R.I. 2003). "When a party is appropriately before the Court, having been properly served with process, and has entered an appearance or appeared specially to contest jurisdiction, the court is vested with jurisdiction. . ." Id. See alsoGuertin v. Guertin, 870 A.2d 1011, 1020 (2005). ("Because Mrs. Sticca-Guertin was not named as a party, was not served with process, and did not waive service of the summons and complaint, she cannot be a party, and the Family Court had no jurisdiction over her. Consequently, the injunction entered against her is void."). Even *Page 45 
though Mrs. Guertin[32] testified during the trial, her presence did not cure the due process deficiency, constitute an entry of appearance, or transform her into a party. Id. at 1020.
Additionally, the Family Court has the statutory authority to order a disposition of any child. Section 14-1-32 provides in relevant part:
 "§ 14-1-32 Power of court to order disposition of child. — If the court finds that a child is delinquent, wayward, neglected, dependent, or otherwise within the provisions of this chapter, it may by order duly entered proceed as follows: . . .
 (1) . . . the court may order that appropriate monetary restitution be made immediately to the owner of the damaged property by the child, his or her parent, parents . . .
 (3) . . . The court may order the parent or parents of the child to undertake a program of counseling, which program shall be designed to attempt to remedy those conditions which led to the child's coming before the court."
The statute contemplates action against the parent or parents. The issue is one of service.
This Court declines to dismiss for lack of jurisdiction without an evidentiary hearing on the issues discussed in this section, specifically, failure to investigate a petition and make the requisite determinations by the intake department, and arraignment and issuance of orders against members of the putative class without first acquiring jurisdiction over them.
 Interpreters, information at arraignment, counsel, due process, and waivers
Language interpreters have been required to assist those who are unable to readily understand and communicate in the English language, and who are involved in legal proceedings in criminal matters before the Superior Court, District Court, or in juvenile matters in the Family Court since 1999. Sections 8-19-1 and 8-19-2 (4). The statute furthers the State's goal of providing meaningful access to criminal legal proceedings for all people who come before the courts. State v.Lopez-Navor, 951 A.2d 508, 513 (R.I. 2008). The Rhode Island Supreme Court *Page 46 
noted that as of July 10, 2008, [33] that the United States Supreme Court has not recognized a constitutional right to a court-appointed interpreter. Id. at 513. In its opinion, the Supreme Court went on to hold "that a trial justice is entrusted with the discretion to appoint an interpreter if he or she determines that a defendant is unable to understand the English language adequately * * *." (Citing State v. Ibrahim,862 A.2d 787, 797, 798 (R.I. 2004)). The Court further went on to rule, "[W]e have long held that a trial justice is granted "large discretion" in the "selection, appointment, and retention of an interpreter." (citing State v. Deslovers,40 R.I. 89, 115, 100 A. 64, 73 (1917)).
Regarding the information presented at the arraignment, the Plaintiffs appear to argue that by failing to "provide adequate information regarding individual rights at the arraignment." (Complaint paragraph 284), Defendant Court Administrators and Magistrates have violated their Due Process rights. Plaintiffs also argue that by permitting children members of the Plaintiff Class to waive their right to counsel without first consulting with counsel (Complaint paragraph 285), Defendant Court Administrators and Magistrates have again violated their Due Process rights. In their prayer for relief, Plaintiffs have requested only declaratory relief against the Defendant Magistrates. (Complaint paragraphs 309, 310, 311). They have not sought relief on those Counts against the Defendant Administrators, nor have they sought preliminary and permanent injunctive relief.
The right to counsel is specifically addressed in Chapter 14-1 dealing with delinquent and dependent children. Section 14-1-32 provides:
 "§ 14-1-31 Services of public defender. — Prior to the commencement of any hearing, the justice shall advise the parent or guardian of any child, or the adult involved, as the case may be, *Page 47 
that if he or she is financially unable to engage counsel, he or she is entitled to the services of the public defender. The public defender shall, at the request of a justice of the family court, appear in court on behalf of that person."
Plaintiffs have prayed for a declaratory judgment only against Defendant Magistrates relative to permitting child members of the Plaintiff class to waive their right to counsel without first consulting with counsel, claiming that was a violation of Plaintiffs Due Process rights as well as those secured under § 14-1-31 While Defendants have argued that the violation was only a civil violation, the United States Supreme Court has held that there is no material difference, with respect to right to counsel, between adult and juvenile proceedings in which adjudication of delinquency is sought. They further held that a proceeding wherein the issue is whether a child will be found to be delinquent and subjected to loss of his liberty for years is comparable in seriousness to felony prosecution. In reGault, 387 U.S. 1, 36, 87 S.Ct. 1428, 1448 (1967). The Supreme Court specifically held that juvenile proceedings to determine delinquency, which may lead to commitment to state institution, must be regarded as criminal for purposes of privilege against self-incrimination. Id. 387 U.S. at 49, 87 S.Ct. at 1455. The Supreme Court also held that [after indicating] that "the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration," quoting Kent v. United States,383 U.S. 541, 561-62, 86 S.Ct. 1045, 1057-58, (1966). (Right to counsel attaches in a waiver proceeding to waive juvenile into adult court). Id.387 U.S. at 36, 87 S.Ct. at 1448. (emphasis added). The Court, inGault, also held that "[T]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child requires the guiding hand of counsel at every step in the proceedings against him." Id.387 U.S. at 36, 87 S.Ct. at 1448. *Page 48 
(footnote omitted). In its comments on due process, the Court went on to further hold, "As a component part of fair hearing required by due process, notice of the right to counsel should be required at all juvenile delinquency proceedings and counsel should be provided on request when family is financially unable to employ counsel." Id. 387 U.S. at 39, 87 S.Ct. at 1450. The Due Process clause of Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to institution in which a juvenile's freedom is curtailed, the child and his parents must be notified of child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child. Furthermore, a juvenile charged with delinquency and his parents had an express right to be advised that they might retain counsel and to be confronted with need for specific consideration of whether they did or did not choose to waive that right, and, if they were unable to afford to employ counsel, they were entitled, in view of seriousness of charge and potential commitment, to appointed counsel unless they chose to waive the right. Id.387 U.S. at 41, 87 S.Ct. at 1451.
In this jurisdiction, the Rhode Island Supreme Court recognized the importance of the right and held that a juvenile who was found wayward for committing an assault on a teacher was entitled to counsel and applied the law set forth in Gault.Gonsalves v. Devine,110 R.I. 515, 520-22, 294 A.2d 206, 209-210 (1972). The Court, in sustaining the appeal to the wayward adjudication, held that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." Id. In *Page 49 
the instant case, the likelihood of incarceration of a juvenile under the jurisdiction of the Truancy Court is a factor to be considered in the context of an evidentiary hearing.[34]
 Due Process is guaranteed to all individuals by the
Fourteenth Amendment of the Constitution of the United States.
Specifically, the Amendment provides that "No State shall
make or enforce any law which shall abridge the privileges or
immunities of citizens of the United States; nor shall any State
deprive any person of life, liberty, or property, without due
process of law." The right is also guaranteed by
article 1 section 2 of the Rhode Island Constitution which states in
relevant part, ". . . No person shall be deprived of life, liberty
or property without due process of law." No single model of
procedural fairness, let alone a particular form of procedure, is
dictated by the Due Process Clause. Kremer v. Chemical
Construction Corporation,
456 U.S. 461, 483, 102 S.Ct. 1883, 1898 (1982) quoting
Mitchell v. W. T. Grant Co.,
416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1974) and
Inland Empire Council v. Millis,
325 U.S. 697, 710, 65 S.Ct. 1316, 1323, 89 L.Ed. 1877 (1945). The
Court thereafter went on to state, "[T]he very nature of due process
negates any concept of inflexible procedures universally applicable
to every imaginable situation." Id. In alleging a violation of
due process pursuant to 42 U.S.C. § 1983, the "procedural due
process" component focuses on the adequacy of the procedures
provided in effecting the deprivation while "substantive due
process" zeroes in on the limits of what a state actor may do to an
individual irrespective of any procedural protections provided.
Dodd v. Sheppard, 436 F. Supp.2d 326 (D.R.I. 2006). (if a
public employee voluntarily resigns from position even though
prompted to do so by events set in motion by his employer, he
has no procedural due process claim.) Due process under the
Fourteenth Amendment has both a substantive component that protects
against arbitrary and capricious infringements and a procedural
component requiring that methods
 *Page 50 
employed satisfy the constitutional standards of fundamental
fairness. Furthermore, procedural due process under the
Fourteenth Amendment is a flexible standard that calls for such
procedural protections as a particular situation demands.
Ardito v. City of Providence,
263 F. Supp. 2d 358, 368 (D.R.I. 2003). (court, using a contract
analysis, award plaintiffs injunctive relief after they received a
letter indicating they had been selected to attend police academy
which was phrased as a "conditional offer of employment", changing
the selection criteria thereafter was enjoined.) A claim for a
denial of procedural due process challenges the constitutional
adequacy of the state law procedural protections accompanying a
deprivation of a protected interest such as life, liberty, or
property. Ciampi v. Zuczek, 598 F.Supp.2d 257 (D.R.I. 2009).
(Any deprivation of landowner's property interest by town's
construction of a drainage ditch on his property, was not a
violation of landowner's procedural due process rights, although
town did not custom tailor a form of process for landowner's
specific circumstances, landowner could have sought just
compensation for his alleged loss in an eminent domain proceeding
which was an adequate post deprivation remedy.)

Generally, a party or parties for whose benefit a right is provided by the constitution, by statute, or by principles of common law may waive such right, regardless of the plain and unambiguous terms by which such right is expressed. Gallucci v.Brindamour, 477 A.2d 617, 618 (R.I. 1984). A waiver of a constitutional right will not be presumed or lightly found.Ruggerio v. Langlois,100 R.I. 186, 193, 211 A.2d 823, 827 (1965) on rehearing106 R.I. 15, 255 A.2d 731 (1965). Furthermore, a valid waiver of constitutional rights by an accused cannot be presumed from a silent record. State v. Feng, 421 A.2d 1258, 1267 (R.I. 1980). (Context of a plea to felony charges). *Page 51 
Consideration of the prospect of a waiver of one's constitutional rights is more applicable in the context of a motion to dismiss for failure to state a claim as opposed to a motion to dismiss for lack of subject-matter jurisdiction. A finding that there has been a waiver is essentially fact driven with the fact finding process to be performed by the justice or magistrate who presided over the proceeding where the waiver is alleged to have occurred.[35] In the criminal context, a waiver of a constitutional right must be voluntary, and a waiver must be a knowing and intelligent act done with sufficient awareness of relevant circumstances and likely consequences to be enforceable. In determining whether a waiver of a constitutional right has been voluntary, knowing and intelligent, courts may take into consideration totality of circumstances and facts surrounding a particular case. Wilkicki v. Brady, 882 F. Supp. 1227,1231-32 (D.R.I. 1995). (police officer voluntarily waived his first amendment rights by agreement in the context of a disciplinary proceeding within the police department.) However, courts will not presume acquiescence in the loss of fundamental rights, but rather indulge every reasonable presumption against the waiver of fundamental rights. Id. at 1231.
There does appear to be some acknowledgment by the Defendants that the Truancy Court intake process which includes waiver form, along with comments by a Magistrate where the parents and child are told that they "don't have the right to appeal" may have to change. Counsel does acknowledge that, "[I]t's not a reasonable thing to think that when the parents signed these forms and the magistrate tells them that they don't have a right to appeal, that they can't appeal." (Tr., August 3, 2010 proceeding, p. 21, ll. 11-14.)
While it appears from the case law that there is a degree of discretion involved regarding interpreters, as well as the claims relative to information provided at arraignment and waiver of *Page 52 
counsel, this Court again raises the same concern with the language of § 14-1-5 providing, in relevant part, that the Family Court shall have exclusive original jurisdiction in proceedings "(1) Concerning any child residing or being within the state who is: (i) delinquent; [or] (ii) wayward", (emphasis added), and whether the statutory construction should be undertaken in the Family Court or the Superior Court. (discussed above). This Court also notes that regarding the right to receive the benefit of counsel prior to waiving any rights and proceeding to Truancy Court, the Plaintiffs have only asked for a declaratory judgment against Defendant Magistrates, and have not asked for preliminary or permanent injunctive relief. (Complaint paragraph 311.) While it is possible that the jurisdiction may be concurrent, this Court will not dismiss at this stage for lack of subject-matter jurisdiction without an evidentiary hearing. Again, given all of the factors discussed thus far, and given that the issue is extremely abstract, this Court will not speculate on any scenario that will result in a finding of jurisdiction, or lack of jurisdiction, in an effort to avoid the shaping of any proof brought out in an evidentiary hearing.
 42 U.S.C. § 1983 Jurisdiction
It is undisputed that the Superior Court has concurrent jurisdiction with the federal courts over civil rights actions pursuant to 42 U.S.C. § 1983. DiCiantis v. Wall,795 A.2d 1121, 1125 (R.I. 2002) citing Licht v. Quattrocchi,454 A.2d 1210, 1211 (RI 1982)
 Eleventh Amendment
This Court is not persuaded by Defendants arguments that theEleventh Amendment bars the action before the Court. Ex ParteYoung,, 209 U.S. 123 (1908) permits suits against state officers for prospective injunctive relief. See also Pulliam v.Allen, [36]466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) where the United States Supreme Court specifically held that judicial immunity is not a bar to prospective injunctive relief against judicial officer acting in her *Page 53 
judicial capacity. The Pulliam case and its holding actually provided the impetus to change the existing law to its current form which specifically provides an exception to those acts undertaken within the scope of a judge's judicial capacity. (See underlined section in statute below).
 "42 U.S.C. § 1983. Civil action for deprivation of rights Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."
 Comity
Comity and abstention only require a court to avoid a decision that would be the opposite of a decision already rendered by another competent court or otherwise interfere with proceedings that are within another court's proper jurisdiction. The Rhode Island Supreme Court has explained that "[t]he principle is generally accepted that when two courts of the same state have concurrent jurisdiction over a claim and the claim is asserted in both courts, the court in which the claim was first asserted has priority of jurisdiction and the second court must defer to it." Lippman v. Kay,415 A.2d 738, 741 (R.I. 1980). (cited by Defendant Administrators in support of their Motion to Dismiss pp. 13-15). But the Supreme Court also went on to state:
 "Less clear is the application of this rule when the actions in the two courts are not identical. On the one hand, the priority principle usually applies when the two pending actions, although not technically identical, involve the same parties and subject matter and call for the same relief. Welsh v. Personnel Board of Pawtucket, 101 R.I. 187, 191, 221 A.2d 476, 478 (1966); Blake v. *Page 54 Butler, 10 R.I. 133, 137 (1872); State ex rel. Ferger v. Circuit Court, 227 Ind. 212, 215, 84 N.E.2d 585, 586-87 (1949). On the other hand, when the parties are not identical, see Boston Providence Railroad v. New York New England Railroad, 12 R.I. 220 (1878), or when the two actions although related seek divergent types of relief, see Welsh, supra, it may not be improper for the second court to assume jurisdiction and proceed with the case. See also Autry v. District Court, 459 P.2d at 867. As one commentator has explained,
 `It is not true that a court, having obtained jurisdiction of the subject-matter of a suit and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and in some instances requiring the decision of exactly the same questions. In examining into the exclusive character of the jurisdiction of such cases, regard must be had to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits.' 1 Bailey, ["The Law of Jurisdiction" 62 (1899)], supra at 62."
This Court does not read Plaintiffs' Complaint, at this stage, as challenging a specific ruling. The relief prayed for including declaratory judgments and instances of preliminary and permanent injunctive relief all appear to involve endeavors by the Plaintiffs to require the Family Court and Truancy Court to adhere strictly to its statutory procedures, as well as those procedures that have been developed under well recognized case law. The Rhode Island Supreme Court, as recently as 2007, characterized comity as "a largely discretionary and somewhat amorphous concept" in the context of an opinion relative to the availability of a divorce action within the Family Court to dissolve a gay marriage between two partners who had married in another state. See Chambers v. Ormiston,935 A.2d 956, 965 (R.I. 2007). The Court further indicated that considerations of comity do not come into play if the court lacks jurisdiction over the case before it. Id.
The Rhode Island Supreme Court has also considered judicial economy along with comity in holding that the Superior Court should have abstained from exercising jurisdiction on a *Page 55 
particular matter until the Bankruptcy Court either had abstained, refused to reopen, or otherwise declined to pass on the merits of the parties' dispute, or adjudicated the effect of the prior owner's default under the plan on the city's tax lien. See NationwideLife Ins. Co. v. Annarino, 727 A.2d 200, 203 (R.I. 1999). Defendants have also cited a Superior Court bench decision inMcKenna v. Healey et al, PC/2009-4179. The bench decision, declining to exercise jurisdiction relative to a Workers Compensation Court issue on principles of comity, notes that there are "alternative avenues of appeal" (Tr., p. 85, ll. 12-14), and noting that "It would be inappropriate to issue injunctive relief, particularly where there is an adequate remedy elsewhere." (Tr., p. 94, ll. 8-10). In 1966, the Rhode Island Supreme Court held that a taxpayer which failed to avail itself of statutory remedies including administrative review of the correctness of a use tax assessment and for judicial review of action of administrator with respect thereto was precluded from challenging tax as invalidly assessed for administrator's alleged failure to comply with the statutes, or challenging procedural provisions as depriving it of property without due process of law. See Langton v. Brady Elec.Co., 100 R.I. 366, 369, 216 A.2d 134, 136 (R.I. 1966). The Supreme Court also articulated:
 "In these circumstances it is essential that we distinguish the instant case from those in which the doctrine of the exhaustion of administrative remedies has application. In United States v. Fritz Properties, Inc., D.C., 89 F.Supp. 772, at page 777, the court said that the doctrine of exhaustion of remedies `is a product of judicial self-limitation resembling the requirement of equity jurisdiction-that a litigant has no standing in equity where he has an adequate remedy at law-although matters of comity and need for orderly administrative procedure helped shape the doctrine.'" See Smith v. Highway Board, 117 Vt. 343, 91 A.2d 805. Id. 100 R.I. at 137, 216 A.2d at 371. (emphasis added).
Rhode Island Courts readily adhere to the rule that equity will not intervene in circumstances in which there is an adequate remedy at law. See Wickes Asset Management, Inc. v. Dupuis,679 A.2d 314, 322 (R.I. 1996). *Page 56 
(Tax abatement petition in which equitable claims were barred). Plaintiffs have asked for preliminary and permanent injunctive relief in several of their prayers for said relief. An injunction is an extraordinary remedy available only when there is no adequate remedy at law. Ward v. City of Pawtucket Police Department,639 A.2d 1379, 1382 (R.I. 1994). See also Brown v. Amaral,460 A.2d 7, 10 (R.I. 1983). An appeal has been found to be an adequate remedy at law in some instances. See Zito v. East SideAssociates, 119 R.I. 629, 381 A.2d 1364 (1978) (an order vacating a lis pendens has the requisite finality on a matter which is collateral to the main action so as to be immediately appealable pursuant to Gen. Laws § 9-24-1.). However the rule is most often applied in the context of a discretionary decision to deny a petition for certiorari in light of the ability of an aggrieved party to file an appeal of a final judgment, decree or order of theSuperior Court. (emphasis added). While § 9-24-1 itself indicates no application to actions in the Family Court, § 14-1-52, discussed below, incorporates Chapter 9-24 by reference.
In the instant case, as discussed above, § 8-10-3.1, entitled "Magistrates — Appointment, duties, and powers", specifically provides in subsections (d) and (e):
 "(d) A party aggrieved by an order entered by a magistrate shall be entitled to a review of the order by a justice of the family court. Unless otherwise provided in the rules of procedure of the family court, such review shall be on the record and appellate in nature. The family court shall by rules of procedure establish procedures for review of orders entered by a magistrate, and for enforcement of contempt adjudications of a magistrate.
 (e) Final orders of the family court entered in a proceeding to review an order of a magistrate may be appealed to the supreme court." (emphasis added). *Page 57 
Plaintiffs also have the option of applying to the Supreme Court for any of the writs described in § 8-1-2 at any time, or pursuing another avenue of statutory appeal under § 14-1-52 which provides:
 "§ 14-1-52 Appeals. — (a) From any final decree, judgment, order, decision, or verdict of the family court, except as provided in subsection (b) of this section, there shall be an appeal to the supreme court, which appeal, in all civil cases except paternity proceedings under chapter 8 of title 15, shall follow the procedure for appeal in civil actions as provided in chapter 24 of title 9. A decision granting a divorce shall be appealable upon entry and, except as otherwise provided by law, the correctness of the decision shall not be reviewable upon an appeal from a final decree for divorce entered in pursuance of § 15-5-23. Appeals in criminal cases in which the family court exercises jurisdiction over adults, and in paternity cases under chapter 8 of title 15, shall follow the procedure for appeal as provided in chapter 24 of title 9. The provisions of chapter 24 of title 9 and applicable procedural rules relating to the superior court shall apply to the family court in matters appealed from the family court; provided, that on appeal, the supreme court may by rule provide for certain circumstances as it may deem appropriate.
 (b) Every person aggrieved by any decree, judgment, order, decision, or verdict of the family court relating to modification of alimony or of child support, or a finding of contempt for failure to pay alimony or child support, may, within twenty (20) days after entry of the decree, judgment, order, decision, or verdict, seek review of questions of law in the supreme court by petition for writ of certiorari in accordance with the procedure contained in this chapter. The petition for a writ of certiorari shall set forth errors claimed. Upon the filing of a petition with the clerk of the supreme court, the supreme court may, if it sees fit, issue its writ of certiorari to the family court to certify to the supreme court the record of the proceeding under review, or so much of it as was submitted to the family court by the parties, together with any additional record of the proceeding in the family court."
While the exact status is unclear, This Court speculates that it is possible that the avenues to appeal may be foreclosed to the remaining Plaintiffs, in at least some instances, by the fact that *Page 58 
many of the putative class Plaintiffs are no longer before the Truancy Court, [37] or any potential appeal may be considered untimely, moot, or waived. To the extent that mootness may be an issue, Rhode Island recognizes a narrow exception to the general rule that the Supreme Court will not decide a question if it would fail to have a practical effect on an actual controversy.Hallsmith-Sysco Food Services, LLC v. Marques,970 A.2d 1211, 1213 (R.I. 2009). The narrow exception to the mootness doctrine exists for those cases that are `of extreme public importance, which [are] capable of repetition but which [evade] review.' City of Cranston v. Rhode IslandLaborers' District CouncilLocal 1033, 960 A.2d 529, 533 (R.I. 2008) (quoting Arnold v.Lebel, 941 A.2d 813, 819 (R.I. 2007)). "Cases of `extreme public importance' are those involving issues of great significance such as `important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights.'"United Service and Allied Workers of Rhode Island v. Rhode IslandState Labor Relations Board, 969 A.2d 42, 45 (R.I. 2009) (quotingCity of Cranston, 960 A.2d at 533-34).
Rhode Island also recognizes an exception to the "raise or waive rule" which precludes the Supreme Court from considering for the first time on appeal issues that have not been properly presented in the first instance in the trial court. However, with respect to certain legal arguments that involve basic constitutional rights, the Rhode Island Supreme Court has recognized a narrow exception to the raise or waive rule. See State v Bido,941 A.2d 822, 829; Pollard v. Acer Group,870 A.2d 429, 432 n. 10 (R.I. 2005); State v. Breen,767 A.2d 50, 57 (R.I. 2001); State v. Burke,522 A.2d 725, 731 (R.I. 1987). For that exception to apply, however, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been *Page 59 
known to counsel at the time of trial." Breen, 767 A.2d at 57. Both of the exceptions however, lie in the discretion of the Rhode Island Supreme Court.
This Court will decline to dismiss on comity grounds at this stage without an evidentiary hearing in order to determine whether Plaintiffs' efforts are actually veiled attempts to obtain a contradictory ruling on a matter already specifically ruled upon in the Family Court or Truancy Court, or whether they are advanced in good faith for legitimate reasons in the context presented in the instant case, and also to determine the adequacy of any remedy at law that such avenues of appeal may provide in lieu of the instant action before the Superior Court.
 B. The Issue of Failure to State a Claim Upon Which Relief can be Granted
As indicated earlier in Part II of this Decision, Rhode Island courts have traditionally held that "a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) should be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena, M.D. et al. v. Microsoft Corporation,796 A.2d 461, 463 (R.I. 2002) (citing Bruno v. CriterionHoldings, Inc., 736 A.2d 99, 99 (R.I. 1999)). The prospect of evidentiary hearings[38] has been discussed in several instances in the previous sections of this Decision. Those instances need not be repeated here.
 Eleventh Amendment
Prior to the amendment of 42 U.S.C. § 1983, the United States Supreme Court expressly held that judicial immunity was not a bar to prospective injunctive relief under the act against *Page 60 
judicial officer acting in her judicial capacity, and also that judicial immunity is no bar to award of attorney fees under section 1988. See Pulliam v. Allen,466 U.S. 522, 541-42, 104 S.Ct.1970, 1981 (1984). In the aftermath of the Pulliam case, Congress amended[39] 42 U.S.C. § 1983 specifically adding the provision:
 "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." (emphasis added).
The Eleventh Amendment specifically provides:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
While the Eleventh Amendment's text does not mention suits brought against a state by its own citizens, case law has allowed such suits. See e.g. Hans v. Louisiana, 134 U.S. 1 (1890). (the amendment reflects a broader principle of sovereign immunity).
The important question in each case is whether the relief constitutes permissible prospective redress ancillary to an equitable relief remedy not barred by the Eleventh Amendment, or a retroactive award requiring the state to pay funds from the state treasury. Vanlaarhoven v. Newman, 564 F. Supp.145, 147 (D.C.R.I. 1983) citing Quern v. Jordan,440 U.S. 332, 346-47, 99 S.Ct. 1139, 1147-48, 59 L.Ed. 2d 358 (1980). In the absence of prospective relief, other forms of relief based solely on past violations of federal law are barred by theEleventh Amendment. Kenyon v. Sullivan,761 F.Supp. 951, 957 (D.C.R.I. 1991). *Page 61 
 Judicial Immunity
No relief, declaratory or injunctive, will lie for any action taken by a Justice or a Magistrate in their respective judicial capacity. This exception is also clearly apparent in the context of 42 U.S.C. § 1983, which provides in relevant part "exceptthat in any action brought against a judicial officer for an act oromission taken in such officer's judicial capacity, injunctiverelief shall not be granted unless a declaratory decree was violatedor declaratory relief was unavailable." (emphasis added).
Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Mireles v. Waco,502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.Mireles, 502 U.S. at 11 (quoting Pierson v. Ray,386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). "Although unfairness and injustice to a litigant may result on occasion, `it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Mireles, 502 U.S. at 11 (quotingBradley v. Fisher, 13 Wall. 335, 347, 80 U.S. 335, 352, 20 L.Ed. 646 (1872)). InMireles, 502 U.S. at 10-12, the Supreme Court explained the limited circumstances under which judicial immunity can be overcome as follows:
 "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Forrester v. White, 484 U.S., at 227-229, 108 S.Ct., at 544-545; Stump v. Sparkman, 435 U.S., at 360, 98 S.Ct., at 1106. Second, a judge is *Page 62 
not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id., at 356-357, 98 S.Ct., at 1104-1105; Bradley v. Fisher, 13 Wall., at 351, [80 U.S. 335, 352,], 20 L.Ed. 646."
Thus, the particular act in question must be scrutinized and the court must "look to the particular act's relation to a general function normally performed by a judge." Id. at 13. Upon determining whether judicial immunity applies a court must inquire regarding the "`nature and function' of the act, not the `act itself'" Id.
The fundamental policy principle underlying the doctrine of judicial immunity was reiterated by the United States Supreme Court in Bradley v. Fisher,80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646, 649 (1871), where the Court held that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." The State of Rhode Island has adopted that reasoning, deciding in Calhoun v. City of Providence,120 R.I. 619, 390 A.2d 350 (1978), that judicial decision-making "must be engaged in * * * freely, independently, and untrammeled by the possibilities of personal liability."Id. at 631, 390 A.2d at 356 (citing Suitor v. Nugent,98 R.I. 56, 199 A.2d 722 (1964)). Further, this Court has long recognized that "judicial independence is at the very core of our judicial system, and courts have guarded it jealously."Calhoun, supra,120 R.I. at 631, 390 A.2d at 356 (citing Stump v.Sparkman,435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). In light of the enormous complexity surrounding the question of judicial immunity, this Court has routinely refused to recognize any attempt to weaken the bulwarks of judicial immunity during the "nearly four hundred years of unbroken adherence to the doctrine." See alsoStiggle v. Tamburini, 467 F. Supp. 2d 183 (D.C.R.I. 2006) (Judicial immunity barred an arrestee's § 1983 suit against a justice of the peace in connection with the allegedly wrongful *Page 63 
collection of a $200 fee from the arrestee at an arraignment; under Rhode Island law, the justice had jurisdiction over the arrestee's arraignment and the setting of bail, and was authorized to collect a fee of no more than $200, and thus, he was functioning as a judge and acting within his jurisdiction.)
 Legislative Immunity
The Rhode Island Supreme Court has observed that the doctrine of legislative immunity is not reserved solely for legislators, and that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."See Maynard v. Beck, 741 A.2d 866, 871 (R.I. 1999) (citingBogan v. Scott-Harris,523 U.S. 44, 55, 118 S.Ct. 966, 973, 140 L.Ed.2d 79, 89 (1998)). While the Court, in Maynard, applied the doctrine of legislative immunity in dismissing a damages action against municipal officials, based upon the officials' attempts to draft, revise, and pass a zoning ordinance, the Court noted with approval, the United States Supreme Court's application of the doctrine of legislative immunity to judicial officers. The Rhode Island Supreme Court expressly noted:
 "Thus, for example, the Supreme Court has extended the protection of legislative immunity to members of the judiciary when they act in a legislative capacity. See Supreme Court of Virginia v. Consumer's Union of the United States, Inc., 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). As a result, courts should employ a `functional approach to immunity questions,' see Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555, 563 (1988), so that even when a judicial body enacts rules `of `general application,' such an action can be considered legislative in nature and entitled to absolute immunity. Consumers Union, 446 U.S. at 731, 100 S.Ct. at 1974, 64 L.Ed.2d at 653." Id. at 870-71. (emphasis added) (Footnote omitted).
The Supreme Court of Virginia enacted rules aimed at regulating attorney advertising. While the Court claimed to have the inherent authority to regulate and discipline the attorneys, it also had the statutory authority to do so. Likewise, in the State of Rhode Island, the various courts have *Page 64 
rulemaking authority pursuant to § 8-6-2. That section provides in relevant part:
 "§ 8-6-2 Rules of practice and procedure. — (a) The supreme court, the superior court, the family court, and the district court, by a majority of their members, shall have the power to make rules for regulating practice, procedure, and business therein. The chief magistrate of the traffic tribunal shall have the power to make rules for regulating practice, procedure and business in the traffic tribunal. The rules of the superior, family, district court and the traffic tribunal shall be subject to the approval of the supreme court. Such rules, when effective, shall supersede any statutory regulation in conflict therewith."
Notwithstanding the express provision of the above section indicating that the rules shall supersede any statutory regulation in conflict therewith, as already discussed herein, a court's rule-making authority may not be used to expand a court's jurisdiction. State v. Robinson et als,972 A.2d 150, 158-59 (R.I. 2009). However, a court rule, if promulgated correctly, [40] it may provide a valid basis for dismissal for failure to state a claim upon which relief can be granted. (Super. R. Civ. P 12(b)(6).) At present, there is no evidence regarding the promulgation of any rule before this Court. That issue is properly the subject of an evidentiary hearing.
 Cases Involving Attempts to Enjoin Another Court
The respective parties have cited cases from other jurisdictions involving attempts to enjoin other courts. Defendants have cited a case where one court refused to enjoin another court. In that particular matter, a state district court judge determined there was no equitable subject matter jurisdiction in a § 1983 lawsuit seeking class certification and prospective injunctive relief prohibiting enforcement of pretrial release procedures. The decision was upheld as there was no ability to show irreparable harm resulting in no equitable jurisdiction. The *Page 65 
appellate court further indicated that the state defendants were entitled to judicial immunity. Smith v State,955 P.2d 1293, 1296 (Kan. 1998)
Plaintiffs cited an action where evaluators, defendants, and attorneys sought federal intervention to enjoin the chief judge of the state judicial circuit from enforcing a local rule requiring driving under the influence (DUI) defendants to have evaluations performed by a particular agency. On a motion to dismiss, the federal judge declined to dismiss on Eleventh Amendment or comity grounds, as well as Younger, [41] Burford, [42] orRooker-Feldman[43] abstention doctrine grounds. Strous vDrew, 739 F. Supp.1231, 1232-35 (N.D.Ill 1990). The judge indicated that he expressed no view as to whether the interest the plaintiffs sought to protect in the evaluator's license was constitutionally permissible or not.[44]
Plaintiffs have also cited the case of Bennett v Lopeman,598 F.Supp. 774 (D.C. Ohio 1984). The case involved an action where the plaintiff, an unemployment compensation claimant whose claim was denied brought a federal due process and equal protection claim against the state alleging that the 30 day appeal statute running from the date of mailing of the last administrative decision on the claim violated due process. The plaintiff alleged he never received the letter. The Federal Court framed the issue as essentially a story of a wayward letter and whether Plaintiff should be denied his appeal rights because of the circumstance of his not receiving the letter. Id. at 777. After determining that the court had jurisdiction and need not abstain, it went on analyze and dismiss defendants' arguments that the claim was barred by theEleventh Amendment, quasi-judicial immunity, and res judicata grounds. The Federal Court ultimately went on to declare the Ohio 30 day appeal statute unconstitutional because it did not *Page 66 
contain a good faith exception for situations when a claimant maintained that a notice or a decision was not delivered.
Any argument as to the analogy and application of the facts of any of the above cases will be left to the parties after determination of specific facts at an evidentiary hearing.
 Other Cases Addressing Some of the Issues
While not cited by any of the parties, the following cases did address some of the issues raised in the instant matter. This Court has not undertaken to determine how widely they may be followed and makes no comment as to the applicability of the cases to the context of the instant matter before this Court or the merits of any adjudication or finding occurring within the Rhode Island Family Court. T.D. et al v. Commonwealth of Kentucky,165 S.W.3d 480 (2005) Ct. App Ky.
The Court of Appeals granted review and held that:
 "(1) school's director of pupil personnel was statutorily required to ascertain causes of juveniles' truancy, become acquainted with their home conditions, and make home visits, prior to filing truancy complaints;
 (2) statutory requirements went to subject matter jurisdiction of the district court; and
 (3) as matter of first impression, district court was required to afford counsel for juvenile opportunity to make closing statement."
Adjudications of delinquency were vacated and cases remanded to the district court.
In M.G. v. Commonwealth of Kentucky, 2008 WL 4683239 (2008), the Kentucky Court of Appeals held that a truancy complaint against a habitual truant was deficient because school personnel did not document the actions it took before filing the complaint. Although the school personnel's actions included several attempted visits to the truant's home, telephone calls to the *Page 67 
home, and placement of the truant in an alternative program, the required documentation was missing. The Court of Appeals held that the statutory requirements were mandatory and, unless met, the family court does not have jurisdiction to hear the matter. (citingT.D. v. Commonwealth, supra.).
See also, C.S. et al v. Commonwealth of Kentucky,2010 WL 985303 (Ky.App.) (2010)
 A Word on the Motion to Strike
Defendants' Motion to Strike Plaintiffs' invocation of 42 U.S.C. §§ 1983 and 1988 is denied without prejudice pending this Court's findings in a contemplated evidentiary hearing.
 No Action Taken Relative to Allegations Against School Defendants
This Court has taken no action against the School Defendants in this phase of the proceeding. It is contemplated that any such action will be undertaken after hearing subsequent to this Decision.
 Conclusion
Defendants' Motion to Dismiss for lack of subject-matter jurisdiction (Rule 12(b)(1)) and failure to state a claim upon which relief can be granted (Rule 12 (b)(6)) is denied without prejudice subject to full development of the facts and context in an evidentiary hearing. Counsel shall submit an appropriate Order for entry.
[1] To the extent that Plaintiffs allege judicial misconduct, the Superior Court does not have jurisdiction over such claims.See G.L. 1956 § 8-16-1 et seq.
[2] Information taken from Family Court Website, http://www.courts.ri.gov/truancycourt/overview.htm.
[3] See Footnote 1 regarding specific jurisdiction of this issue.
[4] Chapter 2 also contained other sections giving the Superior Court original jurisdiction of actions at law, and those involving title to real estate, except actions for possession of tenements let or held at will or by sufferance, and criminal jurisdiction. Those sections need not be discussed at this time.
[5] The author, Ms. D'Ambra, was appointed by the Governor as the Child Advocate for the State of Rhode Island in 1989 and maintained that position at the time the essay was published in the Roger Williams University Law Review in the Spring of 1997. She is presently an associate justice of the Family Court.
[6] Information taken from Family Court Website, http://www.courts.ri.gov/truancycourt/overview.htm.
[7] http://www.courts.ri.gov/truancycourt/mission.htm.
[8] The legislators included then State Representative David N. Ciccilline, then State Senator Catherine E. Graziano, and then State Senator Aram G. Garabedian, in his official capacity as a State Senator and Chairman of the Senate Subcommittee on Human Services and Transportation. The actual causes of action brought in two (2) lawsuits are described in footnote 1 of the opinion.
[9] The factual context is succinctly set forth in the beginning of the opinion. It has been reprinted here with minor grammatical changes. Cronan ex rel State v. Cronan,774 A.2d 866, 869 (2001).
[10] The text below in this footnote was taken from a footnote in the case verbatim. Rule 23 of the District Court Rules of Criminal Procedure requires the District Court to inform a defendant who has been charged with an offense punishable by imprisonment of a term of more than six months that a failure to file a written waiver of the defendant's right to a jury trial in the first instance within ten days of the arraignment shall result in a transfer of the proceeding to Superior Court for a trial there. The defendant asserts that in the District Court his trial attorney withdrew his previously filed waiver of his right to a jury trial and that he did so outside his presence and without his permission or knowledge. The record, however, is inadequate to determine what defendant knew, allowed, or agreed to in connection with the removal of this case from the District Court to Superior Court, except to indicate that his attorney deliberately accomplished this removal and that defendant and his attorney allowed the Superior Court trial to proceed to a verdict there without raising any objection to the procedure that removed the case to the Superior Court in this manner.
[11] At this point in the Cronan opinion, the Supreme Court inserted a footnote revealing that the Attorney General, as anamicus curiae to the defendant's appeal, urged the Supreme Court to conclude that the Superior Court lacked jurisdiction to hear this case because no prosecutor from the Attorney General's office or other authorized attorney prosecuted this case to judgment.
[12] § 9-24-25 Certification to supreme court on agreedstatement of facts. — Whenever any civil action, legal or equitable in character, is pending in a district court or in a superior court, and the parties shall file in the clerk's office an agreed statement of facts in the action, the court shall certify the action to the supreme court to be there heard and determined. After having decided the action, the supreme court shall send back the papers therein, with its decision certified thereon, to the court from which the action was certified, which shall enter final judgment upon the decision.
[13] § 9-24-27 Certifications of questions of importance to thesupreme court. — Whenever in any proceedings, civil or criminal, legal or equitable, in the superior court or in any district court, any question of law shall arise or the constitutionality of an act of the general assembly shall be brought in question upon the record, which, in the opinion of the court, or in the opinion of the attorney general if the state is a party to the proceeding or if he or she has intervened therein, is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify the question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined; provided, that no question shall be so certified in any criminal case where the defendant has not been released on bail.
[14] A specific example has been attached as Exhibit A in Defendant Pagliarini's Reply to the Plaintiffs' Response to Motion to Dismiss.
[15] This consideration will be discussed infra.
[16] Complaint, Paragraph 308.
[17] This Court notes that there is no prayer for a preliminary and permanent injunction associated with this paragraph.
[18] Complaint, Paragraph 312.
[19] Complaint, Paragraph 306.
[20] Complaint, Paragraph 307.
[21] No injunctive relief is requested in Paragraphs 309, 310, and 311 of the Complaint.
[22] Complaint, Paragraphs 309, 310, and 311 respectively.
[23] There is no request for preliminary relief in this paragraph.
[24] Complaint, Paragraph 313.
[25] A specific example has been attached as Exhibit A in Defendant Pagliarini's Reply to the Plaintiffs' Response to Motion to Dismiss.
[26] "concerning." Collins EnglishDictionary — Complete Unabridged 10th Edition. HarperCollins Publishers. 14 Sept. 2010. Dictionary.comhttp://dictionary.reference.com/browse/concerning
[27] The fact that the question was abstract was argued by counsel as well at the August 3, 2010 oral argument. (Tr., p. 11, Line 3.)
[28] The complaint requests that this Court prohibit the Administrators from allowing Truancy Court proceedings that are not transcribed or recorded. (Paragraph 308).
[29] At the time, the jurisdiction was vested solely in the Superior Court. Jurisdiction is now vested in both the Superior Court and the Family Court. See
P.L. 1979 Ch. 373 and Rule 57 of the Rules of Procedure for Domestic Relations.
[30] The Supreme Court specifically referred to §§ 42-35-9(e) and 42-35-10 (4).
[31] See Section entitled "Other Cases Addressing Some of the Issues" infra.
[32] Her name is actually referred to as Mrs. Sticca-Guertin in the text of the opinion.
[33] The Federal Circuit Court for the Eastern District of California also noted a lack of U.S. Supreme Court guidance on the issue in its memorandum decision as of January 14, 2010. Singh v. Curry,689 F. Supp. 2d 1250, 1263 (E.D.Cal. January 14, 2010.)
[34] This was argued in Judicial Defs.' Mem. in Supp. of Their Mot. to Dismiss at 3.
[35] There are instances where individuals waive their constitutional rights in a setting that occurs outside of the courthouse. Those situations do not appear to be relevant to the facts pleaded in the instant case.
[36] Gladys Pulliam was a state Magistrate for the County of Culpeper, Virginia
[37] This is discussed to some extent in Defendant Pagliarini's and Richard's Memorandum in support of the Motion to Dismiss beginning at p. 3.
[38] This Court contemplates permitting some limited discovery in order to adequately prepare for any evidentiary hearing.
[39] The law was amended in 1996 to provide judicial officers with immunity from injunctive relief. This amendment partially overruledPulliam.
[40] Approval by a majority of the court's members, except for the Traffic Tribunal where the Chief Magistrate shall promulgate the rules, and approval by the supreme court is required under § 8-6-2.
[41] Younger v. Harris,401 U.S. 37, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)
[42] Burford v. Sun Oil Co.,319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)
[43] District of Columbia Court of Appeals v. Feldman,460 U.S. 462, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983)
[44] This Court checked for the ultimate disposition as recently as September 27, 2010 on Westlaw but found no reported decision on the merits.